1  Joseph J. Popolizio, Bar #017434
   Justin M. Ackerman, Bar #030726
2  Ian C. Beck, Bar #035599
   JONES, SKELTON & HOCHULI, P.L.C.
3  40 North Central Avenue, Suite 2700
   Phoenix, Arizona 85004
4  Telephone: (602) 263-1700
   Fax: (602) 200-7876
5  jpopolizio@jshfirm.com
   jackerman@jshfirm.com
6  ibeck@jshfirm.com

7  Attorneys for Defendants

8

9              UNITED STATES DISTRICT COURT

               DISTRICT OF ARIZONA
10

11 Johnny Wheatcroft and Anya Chapman, as      NO. 2:18-cv-02347-MTL
   husband and wife, and on behalf of minors J.W.
12 and B.W.,                                   **MOTION TO PRECLUDE**
                                               **PLAINTIFFS' TWELFTH**
13                              Plaintiffs,    **SUPPLEMENTAL RESPONSES**
                                               **TO THE MANDATORY INITIAL**
14         v.                                  **DISCOVERY PROJECT**

15 City of Glendale, a municipal entity; Matt
   Schneider, in his official and individual
16 capacities; Mark Lindsey, in his official and
   individual capacities; and Michael Fernandez, in
17 his official and individual capacities,

18                              Defendants.

19

20         Defendants City of Glendale, Matt Schneider, Mark Lindsey, and Michael

21 Fernandez ("Defendants") move to preclude Plaintiffs' Twelfth Supplemental Responses to

22 the Mandatory Initial Discovery Project ("12th MIDP") and the additional exhibits disclosed

23 therein. Plaintiffs' 12th MIDP and its exhibits are egregiously untimely and evidence a clear

24 disregard for this Court's deadlines. Accordingly, based on the following Memorandum of

25 Points and Authorities, Defendants move to preclude Plaintiffs' 12th MIDP and the exhibits

26 disclosed therein from use in any future motion, discovery, or trial in this case.

27

28

9266730.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PLAINTIFFS' TWELFTH MIDP, AND ITS EXHIBITS, WERE DISCLOSED NINETY-ONE DAYS AFTER THE COURT'S CLEAR DEADLINE TO COMPLETE ALL FACT DISCOVERY.

"The deadline for *final supplementation* of Mandatory Initial Discovery Pilot ("MIDP") responses and the *completion of fact discovery"* was "December 4, 2020." Doc. 178 (emphasis added).    On March 5, 2021, Plaintiffs served their Twelfth Supplemental Responses to the Mandatory Initial Discovery Project. *See* Plaintiffs' 12th MIDP, attached as **Exhibit 1;** *see also* Doc. 232. Included in those Responses were two exhibits: Minutes of the Risk Management Trust Fund Board dated 11/5/2020 and a graph taken from those minutes. *See* **Exhibits 2 and 3.** Those exhibits appear to address an entirely novel issue that discovery from either party has not previously addressed.

### II.   PLAINTIFFS' 12TH MIDP AND ITS EXHIBITS ARE GROSSLY AND UNJUSTIFIABLY UNTIMELY.

The Court's Order granting the Second Joint Motion to Extend Deadlines set a clear deadline for the final date the parties had to supplement their responses to the Mandatory Initial Discovery Project: "[t]he deadline for *final supplementation* of Mandatory Initial Discovery Pilot ("MIDP") responses and the *completion of fact discovery* is extended to December 4, 2020." Doc. 178 (emphasis added). In providing supplemental MIDP responses ninety-one (91) days after December 4, 2020, Plaintiffs once again find themselves in violation of the Court's deadlines for this case. Moreover, Plaintiffs made absolutely no attempt to explain this delay to Defendants or this Court in their notice of filing with this Court prior to their untimely supplemental MIDP.

As the Court is aware, at issue in Defendants' previously filed Motion to Strike is whether Plaintiffs' untimely disclosure of their expert rebuttal report made eleven (11) days after the applicable deadline was with good cause. *See* Doc. 225. Plaintiffs attribute that violation to a calendaring mistake. *See* Doc. 230. Surely no such argument can be made here. Plaintiffs' 12th MIDP was not made within a few days or weeks of the fact discovery deadline. Rather, Plaintiffs' recent disclosure comes more than *three full months* after the Court's

2

1   deadline.

2          Even more egregiously, Plaintiffs' untimely disclosure comes almost

3   immediately after the parties fully briefed an issue regarding the timely compliance with this

4   Courts' Scheduling Order. *See* Docs. 225, 230, and 231. Apparently the arguments presented

5   by Defendants in that briefing held no great importance for the Plaintiffs' counsel. Just a few

6   days after apologizing to the Court for what they described as an "inadvertent late

7   disclosure," counsel once again violated the Scheduling Order by making a supplemental

8   disclosure that is ninety-one (91) days past its appropriate deadline. *See* Doc. 230 at 2:16-17.

9   This violation certainly cannot be chalked up to merely recording the deadline incorrectly.

10  Thus, no good cause exists to permit such an untimely disclosure and it should be stricken.

11  **III.   THE COURT MUST DISREGARD PLAINTIFFS' UNTIMELY
     DISCLOSURE.**

12
13         As recent briefings have already established, Ninth Circuit precedent places

14  great value on a Scheduling Order, noting that it "is not a frivolous piece of paper, idly

15  entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth
     Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (quotation omitted). Of course, the Federal

16  Rules of Civil Procedure support that position, dictating that "[i]f a party fails to provide

17  information . . . as required by Rule 26(a) . . . the party is not allowed to use that information .

18  . . to supply evidence on a motion, at  hearing, or at trial." *See* Fed.R.Civ.P. 37(c)(1). The

19  disclosing party carries the burden of providing "timely, accurate, and sufficient" disclosures.

20  *Krause v. County of Mohave*, 459 F.Supp.2d 1258, 1269 (D. Ariz. 2020). When a party fails to

21  carry that burden, Fed.R.Civ.P. 37(c)(1) is a self-executing, automatic sanction. *Id.* (citing *Yeti*

22  *by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); Fed.R.Civ.P. 37,

23  Advisor Committee's Note (1993)). As with their untimely disclosure of their rebuttal expert

24  report, Plaintiffs have failed to carry their burden of providing timely disclosures and must

25  accept the self-executing, automatic sanction that their 12th MIDP and its exhibits be

26  excluded from future use in this case.

27         Just as Plaintiff's ninety-one day tardiness cannot be the product of a mere

28

3

calendaring mistake, Defendants equally face prejudice thanks to Plaintiff's untimeliness. Specifically, in their 12th MIDP, Plaintiffs disclose two exhibits that broach a topic that had not previously been explored in discovery in this case. The exhibits pertain to a Risk Management Trust Fund Board meeting which occurred in November 2020. *See* **Exhibit 1**. There had been no mention whatsoever of that meeting or its subject until Plaintiffs' untimely disclosure. Now, the deadline for fact discovery has long since passed and Defendants are left with no options to conduct discovery regarding this meetings, its topics, and its relevance, if any, to the instant case. As the Defendants are precluded from conducting discovery on this topic, they face considerable prejudice by Plaintiffs' disclosure – especially of Plaintiff attempts to use the documents contained within Exhibit 1 in response to a summary judgment motion or at trial in this matter.

As noted above, this untimely disclosure is not the first time the Plaintiffs have disregarded the Court's Scheduling Order in this action. Previously, Plaintiffs disclosed their rebuttal expert opinion more than one week after the deadline to do so. And while the Court permitted the Plaintiffs to make use of that untimely report, it issued a clear warning to the Plaintiffs about the consequences of untimely disclosures. *See* Doc. 240 at pg. 3. In fact, the Court explicitly warned that it "may not be as generous in the future with any untimely disclosures or filings." *Id.* Defendants argue that the time for generosity has passed. Plaintiffs' 12th MIDP was disclosed ninety-one days past the deadline. Even more egregiously, it was disclosed immediately after the parties fully briefed a dispute on this exact issue. Given Plaintiffs' clearly untimely disclosure, and the prejudice Defendants face on this new issue, Plaintiffs should be barred from using any of the information contained in their recent supplement and its exhibits.

## IV.   CONCLUSION

Based on the foregoing, this Court should exclude the Plaintiffs' 12th MIDP and its exhibits from any use in future motions or at trial in this case.

9266730.1

DATED this 26th day of March, 2021.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/ Joseph J. Popolizio
　　Joseph J. Popolizio
　　Justin M. Ackerman
　　Ian C. Beck
　　40 North Central Avenue, Suite 2700
　　Phoenix, Arizona  85004
　　Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2021, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.


Marc J. Victor
Jody L. Broaddus
Attorneys for Freedom
3185 South Price Road
Chandler, Arizona 85248
Marc@AttorneyForFreedom.com
Jody@AttorneyForFreedom.com
Attorneys for Plaintiffs



/s/Karen Gawel

5

9266730.1

# *EXHIBIT 1*

**Marc J. Victor, SBN 016064**
**Jody L. Broaddus, SN 020122**
ATTORNEYS FOR FREEDOM
3185 South Price Road
Chandler, Arizona 85248
Phone: (480) 755-7110
Fax: (480) 857-0150
Marc@AttorneyForFreedom.com
Jody@AttorneyForFreedom.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnny Wheatcroft and Anya Chapman, as husband and wife, and on behalf of minors J. W. and B. W., | Case No.: 2:18-cv-02347-SMB |
| Plaintiffs, | |
| v. | **PLAINTIFFS' TWELFTH SUPPLEMENTAL RESPONSES TO THE MANDATORY INITIAL DISCOVERY PROJECT** |
| City of Glendale, a municipal entity; Matt Schneider, in his official and individual capacities; Mark Lindsey, in his official and individual capacities; and Michael Fernandez, in his official and individual capacities; | |
| Defendants. | |

Plaintiff Johnny Wheatcroft individually, and on behalf of minors J.W. and B.W. (collectively, "Plaintiffs"), hereby submit their Rule 26(a) Disclosure Statement pursuant to Fed. R. Civ. P. 26(a) and the Mandatory Initial Discovery Pilot Project Order effective May 1, 2017. Plaintiffs reserve the right to supplement this disclosure statement pursuant to the Federal Rules of Civil Procedure and the Court's Orders in this matter. ***Supplemental information will appear in bold and italic text.***

**I.**    **State the names and, if known, the addresses and telephone numbers of all persons who you believe are likely to have discoverable information relevant to any party's claims or defenses, and a fair description of the nature of the information each such person is believed to possess.**

A.     Plaintiff Johnny Wheatcroft, c/o Attorneys For Freedom, 3185 South Price Road, Chandler, Arizona, 85248; Phone: 480-455-5229.  Johnny Wheatcroft is expected to testify as to the circumstances, manner, causation and results of the incident and his damages, and his communications with Defendants and their agents regarding the incident giving rise to this action. Johnny will testify about his pain, suffering, humiliation, and other damages resulting from the incident that is the subject of Plaintiffs' Complaint.  He will further testify as to his past, present, and continuing injuries and damages resulting from the incident.  Johnny Wheatcroft will testify about matters relevant to this litigation. ***Johnny Wheatcroft will testify consistent to statements made in his deposition in this matter.***

B.     Plaintiff Anya Chapman, c/o Attorneys For Freedom, 3185 South Price Road, Chandler, Arizona, 85248; Phone: 480-455-5229.  Anya Chapman is expected to testify as to the circumstances, manner, causation and results of the incident and her damages, and her communications with Defendants and their agents regarding the incident giving rise to this action. Anya will testify about her suffering and damages resulting from the incident that is the subject of Plaintiffs' Complaint.  She will further testify as to her past, present, and continuing damages resulting from the incident.  Anya Chapman will testify about matters relevant to this litigation. ***Anya will testify consistent to statements made in her deposition in this matter.***

C.     Plaintiff J.W., c/o Attorneys For Freedom, 3185 South Price Road, Chandler, Arizona, 85248; Phone: 480-455-5229.  J.W. is expected to testify as to the circumstances, manner, causation and results of the incident and his damages, and his communications with Defendants and their agents regarding the incident giving rise to this action.  J.W. will testify about his terror, suffering, and damages resulting from the incident that is the subject of Plaintiffs' Complaint.  He will further testify as to his past, present, and continuing injuries and damages resulting from the incident.  J.W. will testify about matters relevant to this litigation. ***JW will testify consistent to statements made in his deposition in this matter.***

D.     Plaintiff B.W. c/o Attorneys For Freedom, 3185 South Price Road, Chandler, Arizona, 85248; Phone: 480-455-5229.  B.W. is expected to testify as to the circumstances, manner, causation and results of the incident and his damages, and his communications with Defendants and their agents regarding the incident giving rise to this action.  B.W. will testify about his terror, suffering, and damages resulting from the incident that is the subject of Plaintiffs' Complaint.  He will further testify as to his past, present, and continuing injuries and damages resulting from the incident.  B.W. will testify about matters relevant to this litigation. ***BW will testify consistent to statements made in his deposition in this matter.***

E.     Shawn Blackburn.  Unknown address.  Shawn Blackburn was the driver in the vehicle that was approached by Defendants Schneider and Lindsey.  He will testify about his knowledge, experience, and other factors and things relevant to this litigation.  ***Mr. Blackburn will testify consistent to statements made in his deposition in this matter***

F.     Robin Nash.  4530 West Myrtle Avenue, Glendale, Arizona 85301.  Robin Nash is the minor Plaintiffs' grandmother.  She will testify about her knowledge, experience, and other factors and things relevant to this litigation. ***Ms. Nash will testify consistent to statements made in his deposition in this matter***

G.     Representatives and/or employees of Motel 6, 7116 North 59th Avenue, Glendale, Arizona 85301.  Representatives and/or employees of Motel 6 were witnesses of this incident and will testify as to what they saw/heard and experienced.  They will testify about matters relevant to this litigation.

H.     Defendant Matt Schneider, c/o Jones, Skelton & Hochuli, P.L.C., 40 North Central Avenue, Suite 2700, Phoenix, Arizona 85004.  Defendant Matt Schneider is an officer with the Glendale Police Department who was involved in this incident.  Defendant Matt Schneider is anticipated to testify about the level of force he used in this incident, his interactions with the

Plaintiffs, and other matters relevant to this litigation. ***Mr. Schneider will testify consistent to statements made in his deposition in this matter***

I.       Defendant Mark Lindsey, c/o Jones, Skelton & Hochuli, P.L.C., 40 North Central Avenue, Suite 2700, Phoenix, Arizona 85004. Defendant Mark Lindsey is an officer with the Glendale Police Department who was involved in this incident. Defendant Mark Lindsey is anticipated to testify about the level of force he used in this incident, his interactions with the Plaintiffs, and other matters relevant to this litigation. ***Mr. Lindsey will testify consistent to statements made in his deposition in this matter***

J.       Defendant Michael Fernandez, c/o Jones, Skelton & Hochuli, P.L.C., 40 North Central Avenue, Suite 2700, Phoenix, Arizona 85004. Defendant Michael Fernandez is an officer with the Glendale Police Department who was involved in this incident. Defendant Michael Fernandez is anticipated to testify about the level of force he used in this incident, his interactions with the Plaintiffs, and other matters relevant to this litigation. ***Mr. Fernandez will testify consistent to statements made in his deposition in this matter***

K.       Rick St. John, c/o Jones, Skelton & Hochuli, P.L.C., 40 North Central Avenue, Suite 2700, Phoenix, Arizona 85004. Rick St. John was the Chief of the City of Glendale Police Department on the date when the incident that is the subject of this lawsuit occurred. Rick St. John is expected to testify as to his knowledge of the incident, the investigations related to the incident, his communications related to the incident, matters as testified to in his deposition, and other relevant matters. ***Mr. St. John will testify consistent to statements made in his deposition in this matter***

L.       Representatives of the City of Glendale, c/o Jones, Skelton & Hochuli, P.L.C., 40 North Central Avenue, Suite 2700, Phoenix, Arizona 85004, including the following:

　　　　a.   Roy Lewis, #15542 ***Mr. Lewis will testify consistent to statements made in his deposition in this matter***

    b.  Adam Spiwak, #15729

    c.  Lacey Tolbert, #13338 ***Mr. Tolbert will testify consistent to statements made in his deposition in this matter***

    d.  Rachel Bousman, #9897

    e.  Jeffrey Pittman ***Mr. Pittman will testify consistent to statements made in his deposition in this matter***

    f.  Dawn Gallagher

    g.  B. Johnston

    h.  Chris Briggs ***Mr. Briggs will testify consistent to statements made in his deposition in this matter***

    i.  Don LaBrant ***Mr. LaBrant will testify consistent to statements made in his deposition in this matter***

    j.  Brandon Blanco ***Mr. Blanco will testify consistent to statements made in his deposition in this matter***

    k.  Rich Levander ***Mr. Levander will testify consistent to statements made in his deposition in this matter***

    l.  Earl Montgomery ***Mr. Montgomery will testify consistent to statements made in his deposition in this matter***

    m. Matthew Moody ***Mr. Moody will testify consistent to statements made in his deposition in this matter***

Plaintiffs anticipate these witnesses will testify about their knowledge of the incident, the investigations related to the incident, their communications related to the incident, matters as testified to in their deposition, and other relevant matters.

M.    Past/present employees and police officers of the City of Glendale. Plaintiffs anticipate these individuals will testify about Glendale Police Department's culture, practices, and

customs, as well as any other information related to the incident and other relevant matters.  The individuals anticipated to testify are as follows:

       *a.*  Joshua Carroll

       *b.*  Matthew Salyers

       *c.*  James Calderon

       *d.*  Aaron Aldridge

N.     Dr. Jeffeory G. Hynes, Ed. D.
        6000 West Olive Avenue
        Glendale, Arizona 85302
        602-332-8380

Dr. Hynes is an expert witness in the areas of law enforcement standards, policies, and procedures.  Plaintiffs anticipate that Dr. Hynes will testify consistent with his opinions related to the incidents that are the subject of Plaintiffs' Complaint.  A copy of his expert report is disclosed herewith.  ***Dr. Hynes will testify consistent to statements made in his expert reports dated 1/31/2020 and 12/21/2020.***

**II.**   **State the names and, if known, the addresses and telephone numbers of all persons who you believe have given written or recorded statements relevant to any party's claims or defenses.**

A.     Representative(s) of the City of Glendale, c/o Jones, Skelton & Hochuli, P.L.C., 40 North Central Avenue, Suite 2700, Phoenix, Arizona 85004.  Plaintiffs believe that the City of Glendale has written or recorded statements from the officers involved in the incident that is the subject of Plaintiffs' Complaint.

**III.**   **List the documents, electronically stored information ("ESI"), tangible things, land, or other property known by you to exist, whether or not in your possession, custody or control, that you believe may be relevant to any party's claims or defenses.**

Without waiving any objections, Plaintiffs reserve the right to introduce the following at trial:

A.     Glendale Police Report No.: 17107320.

B.   Defendant Matt Schneider's body-worn camera footage.

C.   Defendant Mark Lindsey's body-worn camera footage.

D.   Defendant Michael Fernandez's body-worn camera footage.

E.   Interview body-worn camera footage.

F.   Video surveillance footage from Motel 6.

G.   Plaintiffs' letter dated July 25, 2018. [WHEATCROFT000001-WHEATCROFT000003]

H.   Glendale Police Department General Order 23.000. [WHEATCROFT000004-WHEATCROFT000027]

I.   COPS TV SHOW video titled "Rock Runner." [WHEATCROFT000028]

J.   COPS TV SHOW video titled "Running For Freedom." [WHEATCROFT000029]

K.   COPS TV SHOW video titled "There He Is, That's Him." [WHEATCROFT000030]

L.   City of Glendale Press Release "Volatile Glendale Policing Situation Detailed." [WHEATCROFT000031-WHEATCROFT000033]

M.   Official Statement of the Office of Mayor Jerry P. Weiers. [WHEATCROFT000034]

N.   Aerial photograph of Motel 6 building and roadways. [WHEATCROFT000035]

O.   June 17, 2019 letter from Ralph D. Harris with enclosures. [WHEATCROFT000036-WHEATCROFT000048]

P.   Glendale Police Department Mission Statement and Values. [WHEATCROFT000049-WHEATCROFT000052]

Q.   Memorandum of Understanding. [WHEATCROFT000053-WHEATCROFT000092]

R.     ABC15 Arizona article "COPS producer stages interview on show involving Glendale officer from tasering incident". [WHEATCROFT00093-WHEATCROFT000105]

S.     ABC15 Arizona video aired as "COPS" DIRECTING COPS. [WHEATCROFT000106]

T.     ABC15 Arizona video aired as GLENDALE PD CULTURE PROBLEM? [WHEATCROFT000107]

U.     ABC15 Arizona video aired as VICTIM'S PARENTS: "IT MAKES US SICK". [WHEATCROFT000108]

V.     ABC15 Arizona video aired as HANDS UP, TASERED IN CHEST. [WHEATCROFT000109]

W.     Corizon Health Records for Plaintiff Johnny Wheatcroft. [WHEATCROFT000110-WHEATCROFT000262]

X.     ABC15 article titled "PD: Glendale officer hits suspect, gets 30 hour suspension." [WHEATCROFT000263-WHEATCROFT000264]

Y.     Phoenix New Times article titled "Man Sues for $1M After Being Tased by Glendale Police." [WHEATCROFT000265-WHEATCROFT000271]

Z.     Report authored by Dr. Jeffeory G. Hynes, Ed. D. dated January 31, 2020. [WHEATCROFT000272-WHEATCROFT000305]

AA.    Email thread regarding Maricopa County Attorney's Office Public Records Request #2019-1121-03. [WHEATCROFT000306-WHEATCROFT000309]

BB.    Public Records Request to Maricopa County Attorney's Office dated November 21, 2019. [WHEATCROFT000310-WHEATCROFT000311]

CC.    Maricopa County Attorney's Office records related to Public Records Request #2019-1121-03. [WHEATCROFT000312-WHEATCROFT000374]

DD.   State of Nevada Marriage Certificate. [WHEATCROFT000375]

EE.   Glendale Police Department General Order - Response to Resistance/ Shooting Review date issued March 20, 2001 and revised on July 31, 2015. [WHEATCROFT000376 - WHEATCROFT000381]

FF.   Glendale Police Department General Order - Less Lethal Weapons and Munitions date issued December 27, 1999 and revised January 15, 2017. [WHEATCROFT000382 - WHEATCROFT000386]

GG.   Glendale Police Department General Order – On-Officer Body Camera Program date issued May 19, 2016 and revised on January 23, 2018. [WHEATCROFT000387 - WHEATCROFT000395]

HH.   Johnny Wheatcroft letters. [WHEATCROFT000396-WHEATCROFT000401]

II.   Report authored by Dr. Jeffeory G. Hynes, Ed. D. dated December 20, 2020. [WHEATCROFT000402-WHEATCROFT000422]

***JJ.***   ***Minutes of the Risk Management Trust Fund Board dated 11/5/2020 [WHEATCROFT000423-WHEATCROFT000425]***

***KK.***   ***Enlarged graph of the top ten departments with the highest claims from the Minutes of the Risk Management Trust Fund Board dated 11/5/2020 [WHEATCROFT000426]***

***LL.***   ***Deposition transcript of BW dated June 12, 2020***

***MM.***   ***Deposition transcript of JW dated June 12, 2020***

***NN.***   ***Deposition transcript of Anya Chapman dated January 13, 2021***

***OO.***   ***Deposition transcript of Johnny Wheatcroft dated January 20, 2021***

***PP.***   ***Deposition transcript of Shawn Blackburn dated August 31, 2020***

***QQ.***   ***Deposition transcript of Brandon Blanco dated November 12, 2019***

***RR.***   ***Deposition transcript of Chris Briggs dated October 10, 2019***

***SS.***   ***Deposition transcript of Michael Fernandez dated June 3, 2019***

***TT.***   ***Deposition transcript of Joseph Michael Flosman dated December 4, 2019***

*UU.*    *Deposition transcript of Donald James Labrant dated October 14, 2019*

*VV.*    *Deposition transcript of Raymond Levander, Jr. dated November 20, 2019*

*WW.*    *Deposition transcript of Roy Lewis dated January 8, 2020*

*XX.*    *Deposition transcript of Mark Lindsey dated June 5, 2019*

*YY.*    *Deposition transcript of Jerry McDaniel dated December 11, 2019*

*ZZ.*    *Deposition transcript of Earl Montgomery dated January 3, 2020*

*AAA.*    *Deposition transcript of Matthew Moody Deposition transcript of dated*

*BBB.*    *dated December 19, 2019*

*CCC.*    *Deposition transcript of Robin Nash dated June 5, 2020*

*DDD.*    *Deposition transcript of Jeffrey Pittman dated December 19, 2019*

*EEE.*    *Deposition transcript of Matthew Schneider dated June 1, 2020*

*FFF.*    *Deposition transcript of Richard St. John dated October 3, 2019*

*GGG.*    *Deposition transcript of Lacey Tolbert dated September 18, 2019*

**IV.**   **For each claim or defense, the facts relevant to it and legal theories upon which it is based.**

Plaintiffs' Amended Complaint asserts claims against Defendants as follows:

**1.**    **COUNT I:  42 U.S.C. § 1983 - Excessive Force in Violation of the Fourth and Fourteenth Amendments Against Defendants Schneider, Lindsey, and Fernandez** for their use of unlawful, excessive, and extremely painful force against Plaintiff Johnny Wheatcroft.

Plaintiff Johnny Wheatcroft did not engage in any illegal activity and there was no probable cause to suspect him of any crime.  Plaintiff Johnny Wheatcroft did not pose a threat to the officers, did not resist the officers or attempt to flee from the unlawful arrest.  The degree of force employed by Defendants Schneider, Lindsey, and Fernandez against Plaintiff Johnny Wheatcroft was not warranted.  Defendants Schneider, Lindsey, and Fernandez used excessive and extremely painful force against Plaintiff Johnny Wheatcroft, even though he was not a threat, resisting, or trying to escape. Defendants Schneider, Lindsey, and Fernandez utilized a significant level of force against

a civilian who was not resisting, which constitutes a violation of his Fourth Amendment rights. Defendants' conduct violated clearly established constitutional rights, which any reasonable person would have known such conduct would do so.  Therefore, Defendants Schneider, Lindsey, and Fernandez are not entitled to qualified immunity.  Defendants Schneider, Lindsey, and Fernandez's conduct and unconstitutional actions were the moving force of Plaintiffs' injuries and damages.  The excessive force that was used on Plaintiff Johnny Wheatcroft by Defendants Schneider, Lindsey, and Fernandez was illegal, unprovoked, without justification, and lacked probable cause, and it further resulted in severe injuries and damages caused by negligence, gross negligence, reckless disregard and/or assault as set forth above, for which Defendants Schneider, Lindsey, and Fernandez are jointly and severally liable.  Defendants Schneider, Lindsey, and Fernandez's unlawful treatment of Plaintiff Johnny Wheatcroft, including repeated tasering of a restrained person and the tasering of his testicles and perineum, violated the duties of care Defendants owed to the Plaintiffs and amounts to pure torture.

As a direct and proximate result of wrongful acts and omissions of Defendants Schneider, Lindsey, and Fernandez, Plaintiffs have suffered devastating injuries and emotional trauma.  As an additional direct and proximate result of wrongful acts and omissions of Defendants Schneider, Lindsey, and Fernandez, Plaintiff Anya Chapman and minors J.W. and B.W. have sustained severe psychological damage as a result of this incident, which have manifested into physical symptoms.

**2.      COUNT II: 42 U.S.C. § 1983 - Retaliation in Violation of the First Amendment Against Defendant Schneider** for retaliating against and punishing Plaintiff Johnny Wheatcroft for exercising his constitutionally protected right to free speech, which included simply questioning why he was being requested to provide identification, and such speech did not warrant a search of his property or unlawful police conduct.

At all times material hereto, Defendant Schneider was acting under the color of law and

within the course and scope of his employment with Defendant City of Glendale.  Plaintiff Johnny Wheatcroft, at all times relevant, had the clearly established right to be free from retaliation for his exercise of free speech.  Any minimally competent police officer or agent of Defendant Glendale would know or should have known about this clearly established right at the time of the conduct complained of herein.  When Plaintiff Johnny Wheatcroft asked Defendant Schneider what the basis for requesting his identification was and stated that he had done nothing wrong, he was exercising his constitutionally protected rights and such speech did not warrant a search of his property or unlawful police conduct.  Plaintiff Johnny Wheatcroft's exercise of his constitutional right was a significant moving factor to the excessive force employed by Defendant Schneider against Plaintiff Johnny Wheatcroft.  In response to Plaintiff Johnny Wheatcroft's lawful speech, including speech as to the basis for requesting identification and stating that he had done nothing wrong, Defendant Schneider retaliated and used excessive and unlawful force against Plaintiff Johnny Wheatcroft, which caused, contributed to cause, and/or was the moving force of his injuries.  Defendant Schneider had retaliatory animus toward Plaintiff Johnny Wheatcroft's lawful speech, and he urged prosecution of Plaintiff Johnny Wheatcroft despite the absence of probable cause.  Defendant Schneider's retaliatory conduct in attacking, assaulting, and torturing a person, who simply asked for the basis for requesting identification and stating that he/she had done nothing wrong, would chill any reasonable person of ordinary firmness in their exercise of their First Amendment rights.  Defendant Schneider's retaliation deprived Plaintiff Johnny Wheatcroft of his clearly established First Amendment right to be free from retaliation for exercising such right.  Therefore, Defendant Schneider is not entitled to qualified immunity.  Based on the circumstances, Defendant Schneider's actions were not objectively reasonable and were intentional and/or grossly negligent.  Defendant Schneider's wrongful acts and omissions amount to violations of Plaintiff Johnny Wheatcroft's constitutional rights.

As a direct and proximate result of Defendant Schneider's unlawful and malicious acts,

Plaintiff Johnny Wheatcroft was deprived of his right to be free from retaliation against protected speech, in violation of the First Amendment of the Constitution of the United States.

**3.     COUNT III: 42 U.S.C. § 1983 – Wrongful Arrest in Violation of the Fourth and Fourteenth Amendments against Defendants Schneider, Lindsey, and Fernandez** for the unlawful and wrongful arrest of Plaintiff Johnny Wheatcroft.

At all times material hereto, Defendants Schneider, Lindsey, and Fernandez were acting under the color of law and within the course and scope of their employment.  Plaintiff Johnny Wheatcroft, at all relevant times, had the clearly established right to be free from wrongful arrest under the Fourth and Fourteenth Amendments.  Plaintiff Johnny Wheatcroft did not commit a crime and no probable cause existed to suspect him of any illegal activity.  Defendants Schneider, Lindsey, and Fernandez wrongfully and illegally detained, handcuffed, and arrested Plaintiff Johnny Wheatcroft despite the lack of probable cause to do so.  Defendants Schneider, Lindsey, and Fernandez deprived Plaintiff Johnny Wheatcroft of his Fourth Amendment rights to be secure in his person by arresting him.  The arrest of Plaintiff Johnny Wheatcroft was wrongful, unlawful, lacked probable cause, and deprived him of his clearly established constitutional rights to be free from unreasonable searches, seizures, and arrests.  Therefore, Defendants Schneider, Lindsey, and Fernandez are not entitled to qualified immunity.

Defendants Schneider, Lindsey, and Fernandez's conduct was engaged in with intent to cause injury, was wrongful conduct motivated by spite or ill will or the involved officers acted to serve their own interests, having reason to know and consciously disregarding a substantial risk that their conduct might significantly injure the rights of Plaintiff Johnny Wheatcroft.

**4.     COUNT IV: 42 U.S.C. § 1983 – Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments against Defendants Schneider, Lindsey, and Fernandez** with regard to their malicious prosecution of Plaintiff Johnny Wheatcroft and the violation of his right to familial association under the Fourth and Fourteenth Amendments.

At all times material hereto, Defendants Schneider, Lindsey, and Fernandez were acting under the color of law and within the course and scope of their employment.  Plaintiff Johnny Wheatcroft, at all relevant times, had the clearly established right to be free from malicious prosecution and the right to familial association under the Fourth and Fourteenth Amendments. Any minimally competent officer or agent of Defendant Glendale would know or should have known of these clearly established rights at the time of the conduct complained of herein. Therefore, Defendants Schneider, Lindsey, and Fernandez are not entitled to qualified immunity. Defendants Schneider, Lindsey, and Fernandez violated Plaintiff Johnny Wheatcroft's Fourth and Fourteenth Amendment rights to be free from malicious prosecution when they instituted charges and proceedings against Plaintiff Johnny Wheatcroft for aggravated assault, a class 5 felony, and resisting arrest, a class 6 felony, which resulted in Plaintiff Johnny Wheatcroft's unlawful prosecution and imprisonment.  Plaintiff Johnny Wheatcroft was in custody for months as a result of these charges before they were dismissed.

As a result of Plaintiff Johnny Wheatcroft's wrongful and malicious prosecution, he was prevented from being an active and integral part of his children's lives and/or the imprisonment created an undue burden on his familial rights. The right of familial association may only be limited by a government agency when their interest in the matter outweighs the individual's fundamental right.  As an additional result of the wrongful and malicious prosecution, Plaintiff Johnny Wheatcroft lost employment opportunities and the ability to generate income.  Indeed, Plaintiff had an interview the day after he was wrongfully arrested, but he was unable to attend due to the wrongful arrest.  Defendants Schneider, Lindsey, and Fernandez instituted baseless and fabricated charges and proceedings against Plaintiff Johnny Wheatcroft despite the lack of probable cause and in violation of Plaintiff's constitutional rights.  Defendants Schneider, Lindsey, and Fernandez instituted charges and proceedings against Plaintiff Johnny Wheatcroft primarily for a purpose other than bringing an offender to justice.  The criminal proceedings

terminated in Plaintiff Johnny Wheatcroft's favor, without compromise on his part.   The prosecution of Plaintiff Johnny Wheatcroft was unlawful, wrongful, baseless, and deprived him of his clearly established right to be free from false and malicious prosecution.   As a direct and proximate result of the aforementioned unlawful and malicious acts of Defendants Schneider, Lindsey, and Fernandez, Plaintiff Johnny Wheatcroft was deprived of his right to be free from malicious prosecution.

     5.     **COUNT V: Civil Rights Violations - 42 U.S.C. § 1983 against Defendants Schneider, Lindsey, and Fernandez** for violations of Plaintiffs' constitutionally protected liberty interests under the First, Fourth, and Fourteenth Amendments.   Defendants' wrongful acts and omissions constitute violations of the First, Fourth, and Fourteenth Amendments of the United States Constitution, and Plaintiffs have been deprived of their constitutional rights, including the familial companionship between parents and children.

     As parents, Plaintiffs have a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of the parent/child relationship without governmental interference, and interference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983.   The First Amendment protects relationships, including family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.   Defendants Schneider, Lindsey, and Fernandez had ample time to correct their obviously wrongful assault, detention, and arrest of Plaintiff Johnny Wheatcroft in front of Plaintiff Anya Chapman and minors J.W. and B.W., but nonetheless failed to do so.   Defendants Schneider, Lindsey, and Fernandez acted with deliberate indifference in violation of the due process right to familial association.   Defendants Schneider, Lindsey, and Fernandez's wrongful acts and omissions, including the excessive use of force and torture against Plaintiff Johnny Wheatcroft, shock the conscience of legitimate law enforcement

objections.  Defendants' wrongful acts and omissions constitute violations of the First, Fourth, and Fourteenth Amendments of the United States Constitution, and Plaintiffs have been deprived of their constitutional rights, including the familial companionship between parents and children. Defendants' wrongful acts and omissions amount to pure torture, which was witnessed by Plaintiff Anya Chapman (Johnny's wife), and their children, who were terrified, screaming, and traumatized as a result of the officers' atrocious conduct.  Plaintiffs Anya Chapman and minors J.W. and B.W. watched helplessly while their husband and father was repeatedly tortured and arrested, and were without their enjoyment of their familial companionship due to Defendants' incarceration of Plaintiff Johnny Wheatcroft.  Through their acts and omissions, Defendants wrongfully and intentionally interfered with Plaintiffs' companionship and society of their parent/child relationship without due process of law.

**6.   COUNT VI:  42 U.S.C. § 1983 – Municipal Liability against Defendant City of Glendale**, which is liable under § 1983 for execution of its governmental policies and/or customs, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, that inflicts injuries or policies which amount to a deliberate indifference to Plaintiffs' constitutional rights.  In addition, Plaintiffs contend Defendant City of Glendale had policies, customs, and/or patterns and practices of failing to properly discipline, train, and supervise its police officers, including the individual Defendants named in this Complaint, in the proper use force, probable cause, and the execution of arrests.  The City of Glendale failed to ensure its police officers could and would conduct themselves in a manner to avoid violating the constitutional rights of individuals, such as the Plaintiffs.

A municipality, such as Defendant Glendale, may be held liable under § 1983 when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.  In addition, under the doctrine of ratification, a municipality, such as Defendant Glendale, may also be liable for the

acts of an employee who is not a final decisionmaker, so long as an actual final decisionmaker demonstrates that authority to make the decision lay with the subordinate by approving the subordinate's decision and the basis for it.  Further, a municipality, such as Defendant Glendale, may be liable under § 1983 for failing to train employees when the failure both can be traced to the injury suffered by a plaintiff and amounts to deliberate indifference to the rights of persons with whom the police come into contact.

At all times relevant, Defendant Glendale's officers, including Defendant Schneider, Lindsey, and Fernandez, were acting under the direction and control of the City of Glendale, which acted by and through its agents and employees who were responsible for making the policies of the Glendale Police Department, its officers, and operations.  The individual Defendants of the Glendale Police Department were acting pursuant to official policy or the practice, custom, or usage of the Police Department, a final decision by a policy maker, or as a result of deliberate indifference toward training or supervision.  Plaintiffs were deprived of their constitutional rights by Defendant Glendale and its employees, including Defendants Schneider, Lindsey, and Fernandez, who acting under color of law at all times relevant herein.  Defendant Glendale has customs or policies which amount to a deliberate indifference to Plaintiffs' constitutional rights.  Defendant Glendale's policies are the moving force behind the constitutional violations.

In addition, under a ratification theory, Defendant Glendale delegated authority to Defendants Schneider, Lindsey, and Fernandez to engage in unlawful arrests and the use of illegal and excessive force, and Defendant Glendale's final policymakers' endorsement of the decisions and actions of Defendants Schneider, Lindsey, and Fernandez to engage in unlawful arrests and the use of excessive force confirms clear that the policy was in effect at the time of the incident and was the moving force for Defendants' unconstitutional acts.  At all times relevant, the City of Glendale had policies, customs, and/or patterns and practices of failing to properly discipline,

train, and supervise its police officers, including the individual Defendants named in this Complaint, in the proper use force, probable cause, and the execution of arrests.  The City of Glendale failed to ensure its police officers could and would conduct themselves in a manner to avoid violating the constitutional rights of the inhabitants of Defendant Glendale.  The final policymakers of the City of Glendale had actual or constructive knowledge of these unconstitutional practices yet failed to take any reasonable or adequate steps to remedy them. Defendant Glendale is also liable under § 1983 for failing to train employees and such failure can be traced to the injuries suffered by Plaintiffs and amounts to deliberate indifference to the rights of Plaintiffs, with whom Defendant Glendale's officers come into contact.  Defendant Glendale was aware of the inadequate training and aware of a high probability of harm if the government failed to act and properly train its employees

Acting under the color of law, by and through the policy makers of Defendant Glendale and pursuant to official policy, customs, and/or patterns and practices, Defendant Glendale intentionally, knowingly, recklessly, and/or with deliberate indifference to the rights of the inhabitants of Defendant Glendale failed to instruct, supervise, control, and/or monitor its police officers.  These policies, customs, and/or patterns and practices led the individual Defendants to believe that misconduct and abuse of constitutional rights would be tolerated and not be subject to any meaningful reprimand or punishment.  This pattern made it foreseeable that officers with the Glendale Police Department, including the individual Defendants, could and would violate a given person's constitutional rights, in precisely the manner Plaintiffs' rights were violated, and Defendant Glendale, through its final policy makers, was deliberately indifferent to this risk.  Had Defendant Glendale diligently exercised its duties to instruct, supervise, control, and discipline, on a continuing basis, it could have prevented or could have aided in preventing the commission of said wrongs and intentionally, knowingly, and with deliberate indifference to the inhabitants of Defendant Glendale refused to do so.

1

**V.      Provide a computation of each category of damages claimed by you, and a description**
2      **of the documents or other evidentiary material on which it is based, including**
       **materials bearing on the nature and extent of the injuries suffered.**

3            Plaintiffs have suffered, and will continue to suffer, irreparable damages as a result of the

4      conduct of the Defendants.

5            A.      Plaintiff Johnny Wheatcroft

6            Plaintiff Johnny Wheatcroft has suffered life-altering injuries and damages.  Johnny was

7      simply trying to have a day with his family when he was violently tortured, sexually assaulted,

8      excessively tased, physically beaten, threatened, harassed, intimidated, and subsequently jailed

9      for months as a result of the purported traffic stop conducted by Glendale Police Department.

10     Johnny is severely damaged physically and psychologically.  As for the physical damages, Johnny

11     has several scars from being smashed into the asphalt of the Motel 6 parking lot and from the taser

12     prongs the officers launched into his skin, which they later improperly and aggressively ripped

13     out at the scene.  Further, as a result of being tased in the testicles and perineum, Johnny now

14     suffers from erectile dysfunction.  Johnny and his wife, Plaintiff Anya Chapman, were in a

15     committed, loving relationship, and this development has significantly impacted such relationship

16     in a detrimental manner.

17           Johnny is psychologically disturbed as a result of the incident that is the subject of this

18     lawsuit.  He sat in jail, innocent, for months constantly worried about his wife and children before

19     his charges were dropped by no compromise of his own.  His unlawful prosecution wrongfully

20     restricted his constitutionally protected right to familial association.  He sat in jail constantly

21     reflecting on the incident, including the devastation, pain, humiliation, and fear he experienced

22     which makes him nauseous and uncomfortable.  Johnny regularly has night terrors from the

23     horrific experience he endured in front of his wife and young children.  Specifically, Johnny is

24     beyond humiliated by the fact his shorts were pulled down, which exposed his buttocks, and was

25     tased in the testicles and perineum by Defendant Schneider in front of his two minor sons.  Johnny

26     has not been able to make peace with this experience and fears that his sons think less of him as a

result.  Because Johnny was immediately placed in custody, Johnny has not been able to pursue any psychological care and is continuing to suffer mentally.

B.    Plaintiff Anya Chapman

Plaintiff Anya Chapman was assaulted by officers of the Glendale Police Department and witnessed her husband, Plaintiff Johnny Wheatcroft, suffer a tremendous amount of pain and humiliation.  Anya is traumatized by the whole ordeal, and so are her children.  She constantly has to reassure her children that police officers are sworn to protect the public, despite the heinous assaults they saw the officers commit on their father without cause.  Further, because Plaintiff Johnny Wheatcroft was tased in the testicles and perineum, he is suffering from erectile dysfunction which has significantly damaged the loving and affectionate relationship she and Plaintiff Johnny Wheatcroft once had.  As a result of the Defendants' wrongful acts and omissions, Plaintiff Anya Chapman has experienced a deprivation of her rights of spousal and familial association.

C.    Plaintiffs J.W. and B.W.

Plaintiff J.W. and B.W., at the ripe ages of 7 and 11-years-old, respectively, witnessed their father suffer from and endure some of the most atrocious and shocking conduct carried out by officers of the Glendale Police Department in history.  Officers that were the very people J.W. and B.W. were learning were sworn to protect the public, which includes their family, acted in such a manner that has terrified them to their very core.  J.W. and B.W. watched as their father, among other things, was horrendously tortured, sexually assaulted, excessively tased, physically beaten, threatened, harassed, intimidated, and subsequently jailed for months as a result of the purported traffic stop.

J.W. and B.W. question whether their parents will return home constantly, even after simple errands like grocery shopping or getting the mail.  J.W. and B.W. also resent leaving their home themselves, in fear that something comparable to the cruel and shocking incident that is the

subject of this lawsuit may reoccur, and that they will have to relive this nightmare.

J.W. and B.W., at such young ages, were exposed to conduct so shocking to the conscience, the emotional duress they experienced has manifested into physical symptoms, such as stomachaches, headaches, night terrors, insomnia, depression, anxiety, and fatigue.  It is impossible these young children will ever forget the torture their father was subjected to by the Glendale Police Department.  As a result of the Defendants' wrongful acts and omissions, Plaintiffs J.W. and B.W. have experienced a deprivation of their rights of familial association.

**VI.** **Specifically identify and describe any insurance or other agreement under which an insurance business or other person or entity may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse a party for payments made by the party to satisfy the judgment.**

Defendant Glendale carries a self-insured retention (SIR) of $1,000,000.00.  It is believed Defendant Glendale also carries four layers of excess liability insurance coverage totaling $50,000,000.00.

DATED this 5th day of March, 2021.

ATTORNEYS FOR FREEDOM

By: /s/Jody L. Broaddus
Jody L. Broaddus, Esq.
Marc J. Victor, Esq.
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of March, 2021, I sent this document and any attachments by email and regular mail to:

Joseph J. Popolizio
Ian C. Beck
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004


By:____ */s/Heather Wilson*

# *EXHIBIT 2*

# Risk Management Trust Fund Board

Return to the Search Page

7.

**Meeting Date:** **11/05/2020**
**FROM:**          **Kathleen Thomas, Risk and Safety Analyst**

## SUBJECT
**DISCUSSION OF PROPERTY AND LIABILITY CLAIMS AND LAWSUITS**

## BACKGROUND

Risk Management handles all property and liability claims received by the City.  Claims received from departments and third parties are adjusted internally.  Any lawsuit is handled jointly between the City Attorney's Office and Risk Management.

Risk Management currently has 139 liability and property claims open.  70 are classified as incidents (no formal claim has been received), 16 are lawsuits, and 143 are active claims which we are pursuing subrogation, investigating liability, or in active settlement.  The below graph shows the number of open claims and litigation for each line of coverage.  Red represents cases in litigation and blue represents claims that have not progressed to litigation.



The below graph shows the total reserve and total paid by coverage.  Professional liability has the highest reserves at above $4.5M.  The city currently has two professional liability cases, in litigation, that are reserved at over $1M each.  The reserves for these cases take into account attorney expenses, expert fees and potential settlement amounts.  The below graph shows the current total reserves and total paid to date by coverage for the current fiscal year.



The below graph shows the top ten departments, over the past 6 years, with the highest paid claims. Gateway Patrol has the highest claim count, total reserve and total payments.  Currently Gateway Patrol has a case that is in litigation which accounts for a large percentage of money spent and the reserve of over $3.5M dollars. Aaron Schepler will speak about this case in his legal review.



During the last claims update we discussed the following claims and would like to provide you an update on the status.

R2018672 – James Hurst – DOL: 12/5/2018
R2019406 – David Dulaney – DOL: 6/14/2019
R2016341 – Sanad Alamawi – DOL: 9/11/2016

Currently there are 3 claims being handled by Risk Management and are reserved greater than $50,000.  The following claims are new or have had significant activity recently.

R2020284 – Bradley Seaton – DOL: 2/4/2020
R2019291 – Shirley Sons – DOL: 7/17/2019
GL-20-168-01 – Ali Al-Helfee – DOL: 1/23/2020

Aaron Schepler works with the Risk Management Department to resolve claims that have progressed to litigation.  The following cases have had significant activity recently and are reserved greater than $50,000.

R2017688        Wheatcroft, Johnny (outside counsel, Joe Popolizio)
R2019568        Santibanez, Antonia

WHEATCROFT000424

R2015556    Gonzalez, Maria Orozco (outside counsel, Michele Iafrate)
R2017712    Discount Auto Sales (outside counsel, Joe Popolizio)
R2018670    Kelly, Timothy
R2019062    Acosta, Juanita
R2014514    Brown, Antonio Marcus – Status of case
R2017075    Wilson, Evelyne – Status of case

Additional information will be provided during Executive Session.  Are there any other types of statistics you would like reported on?

**RECOMMENDATION**

For discussion only.  No recommendation at this time.

| GO TO PREVIOUS PAGE | GO TO TOP OF PAGE |

W3C  **WAI-AA WCAG 2.0**

AgendaQuick ©2005 - 2021 Destiny Software Inc. All Rights Reserved.

# *EXHIBIT 3*



| | Budget and Finance Administration -General Fund | Commercial Frontload-Solid Waste | Facilities-General Fund | Fire Operations-General Fund | Foothills Patrol Division-General Fund | Gateway Patrol Division-General Fund | Parks Maintenance-General Fund | Wastewater Collection-Sewer | Street Maintenance | Police Department |
|---|---|---|---|---|---|---|---|---|---|---|
| Reserve | $500,000 | $10,000 | $107,983 | $18,000 | $31,000 | $3,750,325 | $236,679 | $307,795 | $750,900 | $1,405,500 |
| Paid | $680,920 | $450,328 | $285,672 | $465,201 | $1,254,407 | $1,612,603 | $475,259 | $250,358 | $347,851 | $303,460 |
| Claims | 4 | 92 | 48 | 104 | 213 | 418 | 92 | 75 | 125 | 75 |

**WHEATCROFT000426**