Joseph J. Popolizio, Bar #017434
Justin M. Ackerman, Bar #030726
Ian C. Beck, Bar #035599
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004
Telephone:  (602) 263-1700
Fax:  (602) 200-7876
jpopolizio@jshfirm.com
jackerman@jshfirm.com
ibeck@jshfirm.com

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Johnny Wheatcroft and Anya Chapman, as husband and wife, and on behalf of minors J.W. and B.W.,<br><br>Plaintiffs,<br><br>v.<br><br>City of Glendale, a municipal entity; Matt Schneider, in his official and individual capacities; Mark Lindsey, in his official and individual capacities; and Michael Fernandez, in his official and individual capacities,<br><br>Defendants. | NO. 2:18-cv-02347-MTL<br><br>**DEFENDANTS' STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

9247766.1

Pursuant to Fed.R.Civ.P. 56, Defendants the City of Glendale, Matt Schneider, Mark Lindsey, and Michael Fernandez ("Defendants") submit the following statements of fact in support of their Motion for Summary Judgment:

1. A misdemeanor arrest warrant for Johnny Wheatcroft was outstanding on July 26, 2017. [**Ex. 1,** Wheatcroft Depo. at 344:19-345:5; **Ex. 2,** Tolbert Body Cam ("TBC") at 04:42:30-04:42:41[1]].

2. On July 26, 2017, Glendale Police Officers were conducting intensive patrol due to increased crime reported in the area. [**Ex. 3,** Location History Report: CoG_WHEATCROFT 036854-036904; **Ex. 4,** Lindsey Depo. at 20:23-21:5, 22:1-21].

3. At approximately 7:30 p.m., Officers Matt Schneider and Mark Lindsey, of the Glendale Police Department Neighborhood Response Squad ("NRS"), contacted the occupants of a Ford Taurus in the parking lot of Motel 6 at 7116 N. 59th Avenue. [Doc. 35 at ¶ 13].

4. Schneider, who was driving, observed the Ford Taurus turn into the Motel 6 without a turn signal. [**Ex. 5,** Schneider Depo. at 42:20-24, 95:3-96:1, 116:5-25, 140:12-17, 175:13-24; **Ex. 4,** Lindsey Depo. at 155:22-156:3, 223:11-13].

5. Schneider was the only occupant of the patrol vehicle who observed the traffic violation, as Officer Lindsey did not observe the vehicle until after it was inside the arches of the Model 6. [**Ex. 4,** Lindsey Depo. at 223:14-17].

6. The occupants of the Ford Taurus were Shawn Blackburn (driver), Johnny Wheatcroft (front passenger) and Anya Chapman and minors J.W. and B.W (rear passengers). [**Ex. 4,** Lindsey Depo. at 219:3-19; **Ex. 6,** Blackburn Depo. at 14:16-16:3].

7. Officers Schneider, Lindsey, and Fernandez all testified they did not know any of the occupants of the vehicle before the incident at issue. [**Ex. 5,** Schneider Depo. at 135:7-136:2, **Ex. 4,** Lindsey Depo. at 219:3-19; **Ex. 7,** Fernandez Depo. at 95:2-9].

8. The diver of the vehicle would later testify that he could not recall

---

[1] The time stamps referenced in Defendants' Statement of Facts are the Axon Body 2 time stamps in the upper right hand corner of the each body-worn camera video.

1

whether he used a turn signal or not. [**Ex. 6,** Blackburn Depo. at 161:17-25; **Ex. 4,** Lindsey Depo. at 222:16-21].

9. Nor did anyone assert that a turn signal was used after the car was later stopped. [**Ex. 8,** Chapman Depo. at 346:7-347:3; **Ex. 9,** Schneider's Body Cam ("SBC") at 02:31:50-02:31:56].

10. As the car pulled into Motel 6, it headed to a parking space, but then quickly backed into another, hiding its license plate from the officers' view. [**Ex. 5,** Schneider Depo. at 141:17-19; **Ex. 4,** Lindsey Depo. at 157:2-12, 179:7-23, 215:12-20, 238:12-25].

11. Schneider and Lindsey knew the Motel 6 was a high crime area "notorious" for having stolen vehicles, drug activity, gang violence, and other illicit activity. [**Ex. 3,** Location History Report: CoG_WHEATCROFT 036854-036904; **Ex. 4,** Lindsey Depo. at 143:7-11, 213:3-7; **Ex. 5,** Schneider Depo. at 47:15-24; **Ex. 10,** McDaniel Depo. at 145:16-146:7; **Ex. 2,** TBC at 4:24:15-16].

12. The Glendale Police Department engaged in a blanket trespass agreement which gives every police officer from the Glendale Police Department authority to act as an agent of the Motel 6 in enforcing the trespassing laws on the property. [**Ex. 11,** WHEATCROFT000036-48; **Ex. 4,** Lindsey Depo. at 143:7-144:7, 213:3-7; **Ex. 5,** Schneider Depo. at 47:15-24; **Ex. 10,** McDaniel Depo. at 146:14-147:5].

13. This agreement, of which Officers Schneider and Lindsey were aware at the time of the incident, gave the Officers the right to make contact with individuals at the Motel 6 to verify they were guests and make an arrest at the motel without contacting motel management. [**Ex. 11,** WHEATCROFT000036-48; **Ex. 5,** Schneider Depo. at 106:13-15; **Ex. 4,** Lindsey Depo. at 143:7-144:7].

14. Officers Schneider and Lindsey both approached the Ford Taurus. [**Ex. 9,** SBC at 2:31:33-2:31:39; **Ex. 12,** LBC at 2:31:43-2:31:59; **Ex. 5,** Schneider Depo. at 142:22-143:7; **Ex. 4,** Lindsey Depo. at 162:10-15].

15. As the officers approached, both the driver's side door and driver's side passenger door were open, which put Lindsey on guard for officer safety issues. [**Ex. 12,**

1  Lindsey Body Cam ("LBC") at 2:31:47; **Ex. 4,** Lindsey Depo. at 251:4-25, and **Ex. 13,** Motel
2  6 Surveillance Video at 18:29:06].

3        16.    Schneider then approached the passenger side of the vehicle, while
4  Lindsey approached the driver side. [**Ex. 13,** Motel 6 Surveillance Video at 18:28:56; **Ex. 9,**
5  SBC at 2:31:34; **Ex. 4,** Lindsey Depo. at 168:6-8].

6        17.    As Schneider approached the passenger side of the vehicle, he noticed
7  that Wheatcroft had his seatbelt over his shoulder, did not have it buckled, but and he was
8  hugging the seat belt, which he believed was in violation of the seat belt law. [**Ex. 5,**
9  Schneider Depo. at 103:13-104:13; 110:19-111:11].

10       18.    Schneider would later testify that, after observing Wheatcroft without
11 his seat belt buckled, he asked for Wheatcroft's ID because he believed he was in violation of
12 the seat belt laws under Title 28, under which he had a right to obtain. [**Ex. 5,** Schneider
13 Depo. at 145:9-20].

14       19.    Schneider asked Wheatcroft if he was staying at the Motel 6, to which
15 he responded "not yet, about to get a room"; Schneider then asked if anyone had
16 identification. [**Ex. 9,** SBC at 2:31:34-2:32:12].

17       20.    Wheatcroft said, "No." [**Ex. 9,** SBC at 2:31:34].

18       21.    Schneider then walked to the back of the vehicle to run the plate, [**Ex.**
19 **13,** Motel 6 Surveillance Video at 19:29:40; **Ex. 9,** SBC at 2:32:19-2:32:36; **Ex. 5,** Schneider
20 Depo. at 142:22-143:7], after which he returned to the passenger side where Wheatcroft was
21 sitting. [**Ex. 13,** Motel 6 Surveillance Video at 19:29:55; **Ex. 9,** SBC at 2:32:19-2:32:36].

22       22.    Schneider then requested Wheatcroft's name; Wheatcroft refused to
23 provide it and became increasingly agitated. [**Ex. 9,** SBC at 2:32:46-2:33:12; **Ex. 5,** Schneider
24 Depo. at 98:2-15, 103:5-8, 143:19-23].

25       23.    At this point Schneider observed Wheatcroft being evasive, hunched
26 over, and attempting to reach his hand into his backpack at his feet. [**Ex. 9,** SBC at 2:32:37;
27 **Ex. 4,** Lindsey Depo. at 186:10-22; **Ex. 14,** Schneider Dec. at ¶ 6].

28       24.    Schneider then commanded Wheatcroft to stop reaching into his

9247766.1

backpack, as Wheatcroft already stated he did not have any identification and, therefore, had no reason to reach into his bag. [**Ex. 9,** SBC at 2:32:39; **Ex. 5,** Schneider Depo. at 98:16-99:20, 143:11-15; **Ex. 4,** Lindsey Depo. at 165:1-167:10].

25. Wheatcroft then said "Oh, okay. I'm sorry." [**Ex. 9,** SBC 2:32:38-2:32:41].

26. Schneider and Lindsey repeatedly noted that Wheatcroft's attempts to reach down toward his backpack at his feet caused them great concern for their safety; Fernandez noted that it would cause a safety concern, also. [**Ex. 5,** Schneider Depo. at 98:16-99:20, 101:14-16, 143:11-15; **Ex. 14,** Schneider Dec. at ¶ 7; **Ex. 4,** Lindsey Depo. at 69:7-14, 78:24-79:24, 89:20-25, 166:5-16, 174:6-19, 255:23-256:14; **Ex. 7,** Fernandez Depo. at 185:9-186:9; **Ex. 10,** McDaniel Depo. at 114:8-17, 121:23-122:7, 151:22-152:19, 157:7-15].

27. While Officer Lindsey testified he was not in a position to see Wheatcroft reach into the backpack, he could hear Schneider give Wheatcroft multiple, repeated commands to stop reaching. [**Ex. 12,** LBC 2:32:46-2:33:33; **Ex. 4,** Lindsey Depo. at 165:1-167:10].

28. Indeed, Schneider testified he did not know what was in Wheatcroft's hands while he was reaching down. [**Ex. 5,** Schneider Depo. at 99:19-24, 100:5-9, 102:13-16, 146:25-147:5].

29. Despite these concerns and Schneider's commands not to reach in his backpack, Wheatcroft again turned away from Schneider and appeared to stick his hand between the seat and center console. [**Ex. 9,** SBC at 2:33:22-2:34:14; Schneider Depo. at 147:12-148:22; 173:25-174:8; **Ex. 4,** Lindsey Depo. at 187:1-16, 189:20-190:7, 196:21-197:2].

30. Thus, while Wheatcroft was verbally stating he was complying with Schneider's commands, physically he was not. [**Ex. 9,** SBC at 2:32:39; **Ex. 4,** Lindsey Depo. at 196:21-197:2, 199:2-10; **Ex. 10,** McDaniel Depo. at 107:7-23, 116:2-12, 124:10-14].

31. As this interaction was occurring, Lindsey spoke with the male driver, Shawn Blackburn, who did not possess a valid driver's license. [**Ex. 4,** Lindsey Depo. at 162:10-163:12; **Ex. 12,** LBC at 02:32:17-02:32:23].

32. Blackburn later admitted he was driving on a suspended license and did not have insurance on the car. [**Ex. 6,** Blackburn Depo. at 130:6-21, 130:25-131:20].

33. Lindsey permitted Anya Chapman, who was in the back seat, to step out of the vehicle due to the heat. [**Ex. 4,** Lindsey Depo. at 165:5-13; **Ex. 9,** SBC at 2:32:46].

34. As Wheatcroft become more agitated, Lindsey asked the driver why his friend was so upset. [**Ex. 12,** LBC 02:33:33-02:33:35; **Ex. 9,** SBC at 2:33:23-2:34:06].

35. For officer safety and the safety of those around them, including the minor children, Schneider opened the car door and attempted to remove Mr. Wheatcroft from the vehicle to maintain a safe eye on him for the duration of the traffic stop and to conduct a pat down for weapons. [**Ex. 9,** SBC at 2:33:08-2:33:13; **Ex. 5,** Schneider Depo. at 102:7-103:1, 147:2-10, 149:2-9, 173:25-174:8; **Ex. 4,** Lindsey Depo. at 169:1-9, 195:3-24; **Ex. 10,** McDaniel Depo. at 104:20-105:7, 122:9-18, 150:2-11, 150:21-151:16; **Ex. 14,** Schneider Dec. at ¶ 8].

36. Sgt. McDaniel would later note during his review of this incident, the angle of Schneider's body camera did not capture everything Officer Schneider was seeing, including the entire movement of Wheatcroft's hands during the confrontation. [**Ex. 10,** McDaniel Depo. at 104:2-10, 106:12-16, 107:24-108:13, 110:8-16].

37. After the door opened Wheatcroft put his foot down outside the vehicle without Schneider's permission. [**Ex. 9,** SBC at 2:33:22].

38. As Sgt. McDaniel would later note, this caused Schneider to have heightened awareness that Wheatcroft was going to get out of the vehicle before Schneider was ready. [**Ex. 10,** McDaniel Depo. at 152:22-153:13; **Ex. 14,** Schneider Declaration at ¶ 9].

39. Schneider then placed Wheatcroft's right arm in an escort hold to assist him from the vehicle and prevent him from lunging back into the vehicle to grab something. [**Ex. 9,** SBC at 2:33:21: **Ex. 5,** Schneider Depo. at 149:2-9; 152:11-153:2; **Ex. 4,** Lindsey Depo. at 192:20-193:6].

40. Instead of cooperating with the officers, Wheatcroft immediately displayed physical resistance, tensing his arm, and pulled away from Schneider. [**Ex. 9,** SBC

5

9247766.1

at 2:33-21-2:33:59; **Ex. 5,** Schneider Depo. at 150:24-152:22; **Ex. 4,** Lindsey Depo. at 168:12-20].

41. After feeling Wheatcroft tense his arm and pull away, Schneider asked Wheatcroft if he was going to fight and displayed his Taser to gain Wheatcroft's compliance and to deter Wheatcroft from physically resisting. [**Ex. 9,** SBC at 2:33:28-2:33:53; **Ex. 4,** Lindsey Depo. at 191:17-23].

42. Wheatcroft stated he was not going to fight and as a result Schneider deescalated the situation by re-holstered his Taser. [**Ex. 9,** SBC at 2:33:28-2:33:53; **Ex. 10,** McDaniel Depo. at 108:20-109:1].

43. However, after Schneider attempted to grab Wheatcroft's wrist and place him in a control hold, he began to shout profanities and actively resist Schneider's control hold and attempt to remove him from the vehicle. [**Ex. 9,** SBC at 2:33:55-2:34:19; **Ex. 14,** Schneider Declaration at ¶ 10; **Ex. 10,** McDaniel Depo. at 116:2-12, 117:2-13].

44. Schneider repeatedly commanded Wheatcroft to stop tensing up, yet despite Wheatcroft's verbal denial that he was not, Schneider's body camera clearly shows striations in Wheatcroft's right arm as he was tensing up and resisting Schneider's control. [**Ex. 9,** SBC at 2:33:55-2:34:19; **Ex. 14,** Schneider Declaration at ¶ 10; **Ex. 10,** McDaniel Depo. at 154:9-155:9].

45. Schneider, upon feeling Wheatcroft's arm tense in resistance to Schneider's attempted control, relayed to Lindsey that Wheatcroft was "gonna fight." [**Ex. 9,** SBC at 2:33:59; **Ex. 4,** Lindsey Depo. at 168:15-20, 200:15-21].

46. Officer Lindsey then came around from the driver side of the vehicle to the front passenger door area to assist Schneider. [**Ex. 9,** SBC at 2:34:02-18; **Ex. 12,** LBC at 2:34:11; **Ex. 13,** Motel 6 Surveillance Video at 19:31:17-19:31:22; **Ex. 4,** Lindsey Depo. at 200:15-23, 256:15-257:10].

47. Around this time, Fernandez arrived on scene and was immediately gestured over by Lindsey for assistance to the driver side door. [**Ex. 13,** Motel 6 Surveillance Video at 19:31:19-19:31:20; **Ex. 7,** Fernandez Depo. at 103:1-105:1].

6

9247766.1

48. Fernandez went to the driver side of the car as Lindsey was assisting Schneider. [**Ex. 13,** Motel 6 Surveillance Video at 19:31:29-19:31:32; **Ex. 7,** Fernandez Depo. at 104:20-105:1].

49. While Schneider attempted to remove Plaintiff Wheatcroft from the vehicle while applying a control hold, Lindsey placed his Taser on Johnny Wheatcroft's shoulder and warned him that if he continued to resist he would be tased. [**Ex. 9,** SBC at 2:34:07; **Ex. 12,** LBC at 2:34:15; **Ex. 4,** Lindsey Depo. at 229:21-230:10].

50. However, Wheatcroft continued to resist, despite this warning. [**Ex. 9,** SBC at 2:34:07-2:34:19; **Ex. 12,** LBC at 2:34:22-27].

51. Lindsey then used his Taser in short drive stun mode capacity twice, for a total of only 0.4 seconds of combined completed connections, in an attempt to gain compliance from, control of, and to avoid physical injury to Wheatcroft. [**Ex. 12,** LBC at 2:34:28-31; **Ex. 9,** SBC at 2:34:20; **Ex. 4,** Lindsey Depo. at 203:22-204:4, 231:8-11, 232:1-235:5, 244:5-9; **Ex. 15,** Babic Report at 39].

52. Lindsey testified that his initial drive stun was ineffective because Wheatcroft moved, so he reengaged with a second drive stun use. [**Ex. 4,** Lindsey Depo. at 234:20-235:5].

53. While Schneider and Lindsey attempted to detain Wheatcroft, Anya Chapman, re-entered the vehicle and saw her husband struggling with the officers. [**Ex. 9,** SBC at 2:34:17-2:34:27; Chapman Depo. at 377:11-13].

54. Chapman then obtained a plastic bag weighing 4.45 pounds that was full of soda from the front passenger seat near Wheatcroft. [**Ex. 8,** Chapman Depo. at 381:11-15, 382:6-13; **Ex. 39,** CoG_WEATCROFT 000259].

55. Then, just as Lindsey drive stunned Wheatcroft, suddenly, intentionally, and without any warning, Anya Chapman, who had re-entered the rear passenger compartment of the vehicle and injected herself into the front of the vehicle between the driver's and front passenger's seats, violently struck Officer Lindsey with a plastic bag filled with soft drinks. [**Ex. 13,** Motel 6 Surveillance Video at 19:31:41-19:31:42; **Ex. 12,** LBC at

2:34:29-34; SBC at 2:34:20-35; **Ex. 4,** Lindsey Depo. at 204:7-11; **Ex. 8,** Chapman Depo. at 70:3-21, 336:2-339:15].

56.     As a result of Anya's assault, Lindsey was knocked unconscious and fell backward on the pavement on the passenger side of the vehicle. [**Ex. 13,** Motel 6 Surveillance Video at 19:31:42-19:31:44; **Ex. 12,** LBC at 2:34:34-2:35:40; **Ex. 4,** Lindsey Depo. at 246:16-248:13].

57.     From this point going forward Lindsey was no longer involved in the altercation involving Wheatcroft or the other passengers. As Lindsey's body worn camera demonstrates, before and as backup officers arrived, Lindsey was trying earnestly to regain his faculties and get up from the ground to assist Schneider. Realizing the seriousness of Lindsey's condition, Schneider repeatedly told him to stay down. However, in his altered state from the severe blow that Anya Chapman delivered to his head, Lindsey continued to struggle, but was unable to assist either Schneider or any responding officer, other than to provide instruction that Ms. Chapman was to be arrested for assaulting him. [**Ex. 12,** LBC at 2:34:34-2:35:40].

58.     After observing Anya Chapman knock out Lindsey, Schneider then stepped back and deployed his Taser (with probes) in an attempt to control the now out of control situation. [**Ex. 13,** Motel 6 Surveillance Video at 19:31:45; **Ex. 9,** SBC at 2:34:25, 2:35:51-2:35:57; **Ex. 14,** Schneider Declaration at ¶ 11; **Ex. 4,** Lindsey Depo. at 205:11-17; **Ex. 10,** McDaniel Depo. at 119:17-120:1, 166:11-168:23].

59.     However, Schneider's Taser was ineffective, as it should have incapacitated Wheatcroft, but Wheatcroft was still able to move. [**Ex. 9,** SBC at 2:34:25-2:34:30; **Ex. 15,** Babic Report at 37 (Figure 30), *id.* at 38 (CoG_Wheatcroft 059157-059158); **Ex. 4,** Lindsey Depo. at 207:4-10, 208:13-16; **Ex. 7,** Fernandez Depo. at 81:23-82:12, 83:2-11, 108:8-11, 110:13-111:3, 112:5-16, 188:3-16].

60.     As the facts, video and unopposed expert analysis would later reveal, one of Schneider's probes did not properly connect with Wheatcroft and can be seen on the ground, thereby making the use of his Taser in dart mode ineffective in incapacitating

8

Wheatcroft. [**Ex. 15,** Babic Report at 37 (Figure 30), *id.* at 38-40 (CoG_Wheatcroft 059157-059158); **Ex. 10,** McDaniel Depo. at 155:16-23, 163:22-164:21, 167:7-168:23].

61. Further, Defendants' expert engineer Darko Babic, opined that Schneider's Taser likely had a battery problem during the encounter. [**Ex. 15**, Babic Report at 40, 42-43].

62. Most important, Wheatcroft admitted that the dart mode Taser applications did not hurt him. [**Ex. 2,** TBC 5:11:06-5:11:16].

63. In his post incident interview, Wheatcroft stated, "Fine tase me with those wires, they don't hurt; they don't hurt at all." [**Ex. 2,** TBC 5:11:06-5:11:16 ].

64. After realizing that Lindsey was rendered unconscious, Fernandez came around to assist Schneider with Wheatcroft from the driver side of the car. [**Ex. 13,** Motel 6 Surveillance Video at 19:31:44-19:31:48; **Ex. 9,** SBC at 2:34:37; **Ex. 4,** Lindsey Depo. at 208:13-16; **Ex. 7,** Fernandez Depo. at 81:23-82:12, 83:2-11, 122:15-22, 171:6-15, 187:12-23].

65. Fernandez then deployed his Taser after seeing Schneider's Taser failed to incapacitate Wheatcroft. [**Ex. 7,** Fernandez Depo. at 110:13-111:3, 123:2-16, 189:17-190:6].

66. Fernandez did not see who struck Officer Lindsey, but he thought that it was Wheatcroft (not Anya Chapman) who knocked Lindsey out. [**Ex. 7,** Fernandez Depo. at 192:5-17].

67. Fernandez's Taser completed its connection for 1.5 to 2 seconds. [**Ex. 7,** Fernandez Depo. at 175:23-177:17; **Ex. 15,** Babic Report at 48; **Ex. 40,** CoG_Wheatcroft 001669].

68. After Fernandez's Taser use, Wheatcroft momentarily locked up. [**Ex. 7,** Fernandez Depo. at 111:4-24, 188:17-21].

69. Despite this, Fernandez still had difficulty handcuffing, but finally did handcuff, the aggressively resisting Wheatcroft. [**Ex. 9,** SBC at 2:34:37-2:345:05; **Ex. 7,** Fernandez Depo. at 112:17-19, 188:10-23; **Ex. 10,** McDaniel Depo. at 156:4-11; **Ex. 16,** Fernandez Dec. at ¶¶ 8-13].

9

9247766.1

70. After handcuffing Wheatcroft, he continued to thrash and resist officer control. [**Ex. 9,** SBC at 2:36:01; **Ex. 5,** Schneider Depo. at 157:21-158:5; **Ex. 7,** Fernandez Depo. at 81:23-82:12, 83:2-11, 108:8-11, 169:8-24, 188:10-23; **Ex. 16,** Fernandez Dec. at ¶¶ 8-13].

71. Thus, at about the exact same time as Fernandez handcuffed Wheatcroft, Schneider drive stunned Wheatcroft's shoulder blade. [**Ex. 9,** SBC at 2:35:06; **Ex. 16,** Fernandez Dec. at ¶¶ 8-13].

72. At this time, due to the fluidity of the situation, Schneider did not know that Fernandez had finally handcuffed Wheatcroft. [**Ex. 5,** Schneider Depo. at 155:4-12].

73. Fernandez then attempted to remove Wheatcroft from the car, at which point Wheatcroft's legs then became wrapped in his seatbelt. [**Ex. 9,** SBC at 2:35:22-2:35:36].

74. During this, one of the minor children reached forward and easily removed the seatbelt from Wheatcroft's legs. [**Ex. 9,** SBC at 2:35:34-36].

75. Wheatcroft was then laid on the ground. [**Ex. 9,** SBC at 2:25:37; **Ex. 7,** Fernandez Depo. at 169:8-170:11].

76. While on the ground Fernandez attempted to place his body weight on Wheatcroft to control him as he continued to struggle. [**Ex. 9,** SBC at 2:35:38].

77. It was at this time Wheatcroft noticed his wife, Anya Chapman being taken into custody; at that time, Wheatcroft strenuously tried to get up and fight with the officers. [**Ex. 2,** TBC at 4:54:02; **Ex. 10,** McDaniel Depo. at 148:7-149:2].

78. As seen on the body camera footage, Wheatcroft, now with renewed vigor and anger, began kicking and striking the officers, including Schneider. [**Ex. 9,** SBC at 2:36:00-2:36:10; **Ex. 14,** Schneider Dec. at ¶ 12; **Ex. 10,** McDaniel Depo. at 148:7-149:2].

79. Just as this occurred as Schneider was momentarily distracted and was attempting to address and calm down minor plaintiff B.W. [**Ex. 9,** SBC at 2:35:40-59].

80. Schneider then reflexively kicked back in response to Wheatcroft's strikes, pinned Wheatcroft's legs to the ground, and commanded him to stop kicking. [**Ex. 9,** SBC at 2:36:01-2:36:10].

10

9247766.1

81. Wheatcroft refused to stop fighting, resulting in Schneider drive stunning Wheatcroft in the buttocks area while holding his right ankle. [**Ex. 9,** SBC at 2:36:01-2:36:10].

82. Schneider testified that he was aiming for Wheatcroft's buttock or thigh when he tased Wheatcroft while he was on the ground. [**Ex. 5,** Schneider Depo. at 158:6-159:7; **Ex. 10,** McDaniel Depo. at 132:13-16].

83. Schneider's body camera also shows the Tasing did not occur on Wheatcroft's genitals. [**Ex. 9,** SBC at 2:36:01-2:36:10].

84. Even Anya Chapman and Wheatcroft could not see a Tasing of Wheatcroft's genitals in their review of the video. [**Ex. 8,** Chapman Depo. at 399:1-25; **Ex. 1,** Wheatcroft Depo. at 441:24-442:9].

85. Wheatcroft can then be seen rolling away from Schneider. [**Ex. 9,** SBC at 2:36:01-2:36:10].

86. Schneider took out his Taser one last time and used forceful, verbal commands telling Wheatcroft he was "done f**king around with you", something known as "shock language" commonly used by officers during violent encounters. [**Ex. 9,** SBC at 2:36:46-56; **Ex. 17,** McCelland Report at 33].

87. Wheatcroft then finally stopped fighting, went limp, and was arrested. [**Ex. 9,** SBC at 2:36:56-2:37:32].

88. The entire rapidly evolving, dynamic, and chaotic encounter between Wheatcroft and the officers lasted under three minutes. [**Ex. 9,** SBC at 2:33:28-2:36:09].

89. The officers would later testify this was a dynamic and fast-moving situation that did not afford them time to think or deliberate. [**Ex. 7,** Fernandez Depo. at 112:23-113:7; **Ex. 14,** Schneider Dec. at ¶ 13; **Ex. 18,** Lindsey Dec. at ¶ 6, **Ex. 16,** Fernandez Dec. at ¶ 6].

90. Moreover, as the facts would later reveal, due to a malfunctioning Taser, Schneider's dart mode and drive stun Taser uses were largely ineffective due to a malfunctioning Taser. [**Ex. 15,** Babic Report at 42-43].

1    91.    Finally, in total, among all of the officers across the three-minute
2  confrontation there were 4 drive stuns and 1-2 dart mode Taser applications.  [**Ex. 15,** Babic
3  Report at 38-42].

Pursuant to [Doc. 114], Defendants Intend On Filing This Portion Under Seal.

23    98.    After Wheatcroft and Anya Chapman were placed under arrest, the
24  officers found methamphetamine in the vehicle.  [**Ex. 23,** CoG_WHEATCROFT 000126,
25  000137, and 000138; **Ex. 24,** Lewis Depo. at 88:11-91:11; **Ex. 8,** Chapman Depo. at 387:8-
26  11; **Ex. 6,** Blackburn Depo. at 58:16-59:3, 82:25-83:20].
27    99.    Shawn Blackburn was adamant that the meth found was not his.  [**Ex.**
28  **6,** Blackburn Depo. at 59:10-60:15, 65:4-8].

12

9247766.1

100. On July 31, 2017, the County Attorney filed charges of Aggravated Assault and Resisting Arrest on Anya Chapman and Johnny Wheatcroft. [**Ex. 25,** CoG_WHEATCROFT 036828-036833].

101. On August 4, 2017, a Grand Jury was convened and "A True Bill" finding was sustained on Anya Chapman and Johnny Wheatcroft for Aggravated Assault and Resisting Arrest. [**Ex. 26,** CoG_WHEATCROFT 036851-036853].

102. Despite the Grand Jury's indictment of Wheatcroft, on October 3, 2017, the Maricopa County Attorney chose not to prosecute Wheatcroft and dismissed the complaint against him without prejudice. [**Ex. 27,** CoG_WHEATCROFT 036906].

103. On October 25, 2017, Anya Chapman pled guilty to aggravated assault, a class 4 felony. [**Ex. 28,** Maricopa County Superior Court Minute Entry re Plea Agreement CoG_WHEATCROFT 036803-036804, **Ex. 8,** Chapman Depo. at 343:19-344:8].

104. The City of Glendale has various police policies governing the traffic stops, the use of force, and de-escalation training. [**Ex. 29,** General Order 23.00, Response to Resistance CoG_WHEATCROFT 000427-000462; **Ex. 10,** McDaniel Depo. at 54:11-22, 55:15-21, 71:7-18].

105. The City regularly trains its officers on these policies. [**Ex. 10,** McDaniel Depo. at 54:11-22, 55:15-21; **Ex. 30,** St. John Depo. at 19:7-12; **Ex. 31,** Blanco Depo. at 15:23-16:11, 26:13-27:8, 30:2-9, 31:19-32:8, 83:5-18; **Ex. 32,** Montgomery Depo. at 18:15-19:24, 86:15-17, 94:17-21, 106:4-10; **Ex. 33,** LaBrant Depo. at 16:9-17:12, 41:4-15, 176:3-18; **Ex. 34,** Training Records].[2]

106. As relevant to this action, Officers Schneider, Lindsey, and Fernandez were all trained on these policies in the academy and received annual officer training. [**Ex. 5,** Schneider Depo. at 80:12-22; **Ex. 4,** Lindsey Depo. at 8:15-20, 31:16-34:16; **Ex. 7,** Fernandez

---

[2] Defendants provide the Court with a sampling of training records demonstrating the regular annual training that the individual Defendant officers received by the City of Glendale without unduly burdening the Court with thousands of pages of training records. Should the Court need further documentation, however, undersigned counsel is happy to provide the Court with the full extent of the training records disclosed in this matter.

13

9247766.1

Depo. at 24:14-25:5, 44:13-16; **Ex. 34,** Training Records; **Ex. 30,** St. John Depo. at 19:7-12, 36:13-17, 37:23-38:11; **Ex. 31,** Blanco Depo. at 15:23-16:11, 26:13-27:8, 30:2-9, 31:19-32:8, 83:5-18; **Ex. 32,** Montgomery Depo. at 18:15-19:24, 86:15-17, 94:17-21, 106:4-10; **Ex. 33,** LaBrant Depo. at 16:9-17:12, 41:4-15, 176:3-18].

107. Officers Schneider, Lindsey, and Fernandez all testified that they were familiar with Glendale's policies. [**Ex. 5,** Schneider Depo. at 81:6-15; **Ex. 4,** Lindsey Depo. at 74:4-10, 107:2-8 and121:22-128:18; **Ex. 7,** Fernandez Depo. at 74:11-18].

108. The individual officers were also all POST approved officers. [**Ex. 35,** WHEATCROFT 059073; 059074, 059072].

109. The City of Glendale also regularly supervised the officers on a daily basis. [**Ex. 5,** Schneider Depo. at 77:14-78:10; **Ex. 30,** St. John Depo. at 19:7-12, 56:11-57:1, 156:25-157:4, 197:16-201:13; **Ex. 31,** Blanco Depo. at 16:13-17:12; **Ex. 32,** Montgomery Depo. at 47:9-16; **Ex. 33,** LaBrant Depo. at 11:11-12:21, 33:8-24, 39:11-20, 60:14-61:2, 115:18-22, 163:21-24, 164:6-8; **Ex. 14,** Schneider Declaration at ¶ 17; **Ex. 18,** Lindsey Declaration].

110. Sergeant LaBrant was Schneider's supervisor. On the day of the incident LaBrant was on vacation so Sergeant Rachel Bousman and Lieutenant Nicholas Susurus responded to the scene to oversee the incident investigation. [**Ex. 14,** Schneider Declaration at ¶ 14].

111. Prior to the incident at issue, Schneider, Lindsey and Fernandez were never previously disciplined for any use of force. [**Ex. 5,** Schneider Depo. at 56:4-57:21; **Ex. 4,** Lindsey Depo. at 131:10-137:21; **Ex. 7,** Fernandez Depo. at 86:4-91:8; **Ex. 33,** LaBrant Depo. at 173:8-24, 175:4-176:2, 190:4-21].

112. Indeed, none of the officers had any previous use of force issues prior to their hiring with the City. [**Ex. 36,** CoG_WHEATCROFT 000605-000608 (Lindsey); **Ex. 37,** CoG_WHEATCROFT 000829-000831 (Schneider); **Ex. 38,** CoG_WHEATCROFT 001208-001211 (Fernandez)].

113. Following the incident giving rise to this action, the City also disciplined

14

Officer Schneider for violating its use of force policy for using his Taser in drive stun mode on Wheatcroft's shoulder just after he was handcuffed by suspending him for three days (30 hours). [**Ex. 5,** Schneider Depo. at 52:12-25; 160:7-162:2].

114. Wheatcroft himself testified that a Grand Jury indictment creates a presumption and demonstrates that probable cause existed for Wheatcroft's arrest. [**Ex. 1,** Wheatcroft Depo. at 43:23-44:12, 48:11-14, 53:16-54:1].

115. Schneider's body camera clearly reveals Wheatcroft struggling with the officers for over 25 seconds before Lindsey came over to assist Schneider and initially drive stun Wheatcroft. [**Ex. 9,** SBC at 2:33:54-2:34:19].

116. Specifically, while Schneider held Wheatcroft's right bicep and grabbed onto Wheatcroft's right wrist, Wheatcroft pushes his arm back and continues to fight with Schneider's attempt to control his right arm. [**Ex. 9,** SBC at 2:33:56-2:34:01].

117. Once Wheatcroft's arm was behind his back he continued to struggle, as you can see on Schneider's body camera, Wheatcroft moved his arm back and forth, as Schneider gave repeated commands to stop struggling and to relax. [**Ex. 9,** SBC at 2:34:01-2:34:19; **Ex. 12,** LBC 2:34:09-2:34:16].

118. Lindsey warned Wheatcroft that he had a Taser on his shoulder. [**Ex. 12,** LBC at 2:34:16-23].

119. During Johnny Wheatcroft's deposition, when asked about the factual basis for his various claims against the Defendants he either could not provide specific facts to support his claim or referred solely to the allegations made in his Second Amended Complaint. [**Ex. 1,** Wheatcroft Depo. at 30-75; *id.* at 33-47 (§ 1983 First Amendment retaliation); *id.* at 47-50 (§ 1983 wrong arrest); *id.* at 50-56 (malicious prosecution/familial association); *id.* at 56-75 (*Monell*)].

DATED this 26th day of March, 2021.

JONES, SKELTON & HOCHULI, P.L.C.

By /s/ Joseph J. Popolizio
Joseph J. Popolizio
Justin M. Ackerman
Ian C. Beck
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of March, 2021, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

Marc J. Victor
Jody L. Broaddus
Attorneys for Freedom
3185 South Price Road
Chandler, Arizona 85248
Marc@AttorneyForFreedom.com
Jody@AttorneyForFreedom.com
Attorneys for Plaintiffs


/s/Karen Gawel