**Marc J. Victor, SBN 016064**
**Jody L. Broaddus, SBN 020122**
ATTORNEYS FOR FREEDOM
3185 South Price Road
Chandler, Arizona 85248
Phone: (480) 755-7110
Fax: (480) 857-0150
Marc@AttorneysForFreedom.com
Jody@AttorneysForFreedom.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnny Wheatcroft and Anya Chapman, as husband and wife, and on behalf of minors J. W. and B. W., <br><br> Plaintiffs, <br><br> v. <br><br> City of Glendale, a municipal entity; Matt Schneider, in his official and individual capacities; Mark Lindsey, in his official and individual capacities; and Michael Fernandez, in his official and individual capacities; <br><br> Defendants. | Case No.: 2:18-cv-02347-SMB <br><br> **JOINT REPORT ON SETTLEMENT TALKS** |

Pursuant to the Case Management Report [Doc. 24], Plaintiff Johnny Wheatcroft, individually, and on behalf of minors J.W. and B.W. (collectively, "Plaintiffs"), and Defendants City of Glendale, Matt Schneider, Mark Lindsey, and Michael Fernandez (collectively, "Defendants") respectfully submit this joint report regarding settlement talks. Plaintiffs and Defendants are collectively referred to herein as the "Parties."

The Parties were set to engage in settlement talks on March 24, 2021. Unfortunately, the Parties were unable to reach a resolution in this matter.

9272049.1

A.  **Plaintiffs' Position.**

Plaintiffs engaged in good faith attempts to participate in settlement discussions but cannot agree Defendants similarly engaged in good faith for the reasons set forth herein.

As a matter of background, on February 15, 2021, Plaintiffs reminded Defendants of the March 26, 2021 deadline for settlement discussions. On February 24, 2021, Plaintiffs requested dates to engage in settlement discussions and also proposed the use of a mediator or settlement judge. On March 4, 2021, Plaintiffs provided dates along with proposed mediators. In response, on March 5, 2021, Defendants were willing to engage in settlement talks (without a mediator) from March 24 to March 26. On that same date, Plaintiffs requested a time Defendants would be available on March 24, 2021. Thus, since March 5, 2021, the parties were to engage in settlement talks on March 24,2021. Suffice it to say Defendants were well aware of this Court's deadline for settlement discussion and, therefore, should have taken steps to ensure all appropriate authority was obtained prior to the settlement talks.

On March 24, the settlement conference began at approximately 10:05 a.m. and ended approximately at 10:20 a.m. During the brief 15-minute conversation, the parties discussed the draft of Defendants' summary judgment motion. Specifically, Plaintiffs' counsel pointed out the motion was predicated on disputed and irrelevant facts which resembled a trial brief as opposed to a summary judgment. In response, Defense counsel indicated the summary judgment motion was to educate the Judge as to the issues in the case, while never denying the motion was replete with disputed material and irrelevant facts.

The 15-minute conversation did not amount to good faith settlement discussions. Since Plaintiffs have made numerous offers and attempts to settle this matter for the past several years with no response from Defendants, Plaintiff reiterated their most recent settlement offer, except for the offer regarding Anya Chapman since she has been dismissed from this lawsuit. Plaintiffs' offer ended the settlement discussion. In this regard, and despite full knowledge that the

settlement talks were to take place at that time, defense counsel simply stated that he would get back to Plaintiffs. In other words, during the settlement talks, Defendants did not convey any offer, and it was apparent defense counsel had no authority to make any offer during the settlement discussions. However, defense counsel indicate he would get back to Plaintiffs' counsel shortly, implying it would be within the hour.

Several hours later, and after still receiving no response from Defendants, Plaintiffs' counsel reached out to defense counsel. Approximately 6 hours later at the end of the day, Defendants made a ridiculously low-ball offer that has no indicia of good faith. The next morning, Plaintiffs submitted four separate offers, as each offer was directed as confidential as to each Defendant. For example, one offer consisted of a stipulation to dismiss that particular party provided that party would engage in "free talks" with Plaintiffs' counsel as to certain evidentiary issues and matters that were adverse to the other Defendants. Another offer consisted of a stipulation to dismiss that party provided that party would engage in "free talks" as to adverse information as to the other Defendants and assign certain claims to Plaintiff. In sum, each offer was highly adverse to the other Defendants. Thus, defense counsel was materially limited by providing independent advice that would be in the best interests of certain Defendants but would be wholly adverse to the other Defendants. *See Matter of Shannon*, 179 Ariz. 52, 61, 876 P.2d 548, 557, modified, 181 Ariz. 307, 890 P.2d 602 (1994), which states:

> The comments provide yet another basis for finding a conflict of interest in this case. The comments state that a conflict may exist when "substantially different possibilities of settlement of the claims or liabilities" exist. ER 1.7 (comments). **Respondent made no effort to have Client A released from this suit. Yet, as was evident from the ease in which Client A's new attorney was able to get Client A released from the suit, Client A's potential for settlement was substantially greater than Fairfield's. Respondent's representation of both Client A and Fairfield, in light of their substantially different positions in terms of settlement, is yet another basis for finding a conflict of interest.**
>
> **Why Respondent has such difficulty accepting that his representation of both Client A and Fairfield created an impermissible conflict of interest is beyond this court's understanding.** Respondent need only recall the letter he wrote to Fairfield's general counsel to understand **how he ran afoul of this ethical rule**. On

the day that he agreed to represent Client A, Respondent wrote the following to Fairfield's general counsel, Terry Flora:

> With respect to our representation of [Client A], I indicated on the phone that we had previously agreed that **we would defend [Client A] since it is to *our obvious advantage* to assure that [Client A] is as friendly as possible to us**.

*Id.* (italics in original)(bold added).

Defendants summarily rejected Plaintiffs' offers. While Plaintiffs were, in good faith, attempting to engage in settlement discussions, Defendants' efforts consisted making a single bad faith offer, which was motivated by Defendants' desire to flood this Court with various meritless motions, which will be address in Plaintiffs' responses to those motions.

Finally, given the posture of this case, Plaintiffs respectfully request a trial date in this matter.

**B.      Defendants' Position.**

The Parties engaged in settlement talks as required. The talks were not fruitful. Defendants do not believe that the Court's assistance in future settlement negotiations is necessary, as the Parties have agreed to proceed to private mediation and have exchanged the names of potential mediators. In Defendants' opinion, that was all that is necessary and proper to report to the Court in this Joint Report. Unfortunately, Plaintiffs contend otherwise and took an expanded reporting approach, which necessitated this response from Defendants regarding Plaintiffs' inaccurate history and spurious accusations.

Plaintiffs' and Defendants' views of this case are diametrically opposed. Defendants readily accept this fact. Plaintiffs do not. Clearly, Plaintiffs and their counsel are disappointed that settlement negotiations were not fruitful. However, attorneys for the parties anticipated and exchanged communications that settlement negotiations without a mediator would be futile. Yet, Plaintiffs' counsel emerged disappointed from settlement negotiations, nevertheless. That disappointment stems from: (1) Defendants' rejection of an aggregate 8 digit settlement offer on the remaining claims; (2) Plaintiffs' dissatisfaction with Defendants' much lower counteroffers

- 4 -

and accompanied explanations; (3) Plaintiffs' counsel's inability to control Defendants' relationship and communications with their attorney and co-defendants before and during these negotiations; and (4) Defendants' rejection of Plaintiff's illusory offers. Regardless, Plaintiffs' disappointment does not equate to Defendants' alleged bad faith participation in settlement talks. Defendants participated in good faith; Plaintiffs, however, did not.

1. **The Accurate History Of The Recent Settlement Negotiations**.

- On the morning of March 24, 2021, settlement talks pursuant to the Order began. And, yes, Defendants had settlement authority. In response to her inquiry, Plaintiffs' counsel was informed of this fact. To claim that Defendants had no settlement authority is simply outrageous.[1]

- Despite Plaintiffs' previous request to discuss the draft of the recently filed Motion for Summary Judgment, Plaintiffs' expressed no interest in discussing it, despite Defendants' counsel's attempt to engage her. No detailed discussion of the Motion for Summary judgment occurred, despite Defendants' counsel's attempt and the fact that he had previously communicated to Plaintiffs' counsel that the Motion for Summary Judgment set the table for settlement negotiations.[2]

- On March 24, 2021, despite her pledge to tender offers separately to the individual Defendants, Plaintiffs' counsel made settlement offers totaling $12,000,000 to all Defendants. In immediate response to the settlement offers, Defendants' counsel explained, generally, the process and the number of individuals overseeing this high profile

---

[1] Defendants offered the entire week of March 22-26 to engage in good faith settlement talks, but offered March 24 for them to commence as it was the least encumbered. While Plaintiffs' counsel chose March 24 to begin settlement negotiations, it was simply not the only day, but the most convenient day of that week to begin them. And while settlement negotiations did commence on that date, as the Court will see, they continued through Friday, March 26, 2021.

[2] Plaintiffs' counsel did not want to discuss the Motion in detail, but rather provided her opinion that issues of fact would preclude the Motion's granting. Suffice it to say that Defendants' counsel disagreed with Plaintiffs' counsel's opinion regarding the Motion then and now.

- case and involved in the negotiations process; he told her that he would get back to her shortly, as soon as he could that day, in response to the offers. Plaintiffs' counsel did not provide a specific deadline by which to respond to the offers, and certainly Defendants' counsel made no representation that it would be within an hour.

- On March 24, 2021, Defendants' counsel, of course, conferred with his four clients, including individuals possessing decision making authority regarding the settlement offers to Defendants—just as he had informed Plaintiffs' counsel that he would do. As a result, that afternoon Defendants rejected those offers and provided counteroffers to the individual Plaintiffs totaling $127,678. Defendants also provided Plaintiffs with their reasoning behind each offer. Plaintiffs' counsel's description of these counteroffers demonstrates her disappointment: "defendants made a low ball offer that has no indicia of good faith."[3]

- Late in morning of March 25, 2021, Plaintiffs' counsel rejected Defendants' settlement offers and provided separate, complicated counteroffers to each Defendant. Each counteroffer had a response deadline of noon March 26, 2021. (The nature of these counteroffers will be addressed below in Section 3).

- Shortly before the noon deadline on March 26, 2021, Defendants' counsel informed Plaintiffs' counsel that each of his clients had rejected Plaintiffs' settlement offer. Despite Plaintiffs' counsel's accusations, those rejections were not "motivated by Defendants'

---

[3] Despite Plaintiffs' counsel's insinuation, Defendants are not obligated to make *any* offer to settle this case, especially if they contend that Plaintiffs' claims are defensible and ripe for summary judgment. It is audacious to judge the propriety of, and intentions behind, Defendants' counteroffers, as Plaintiffs' counsel has done in this Report. Again, the Parties have different opinions regarding the liability and damages issues of this case. Unlike Plaintiffs' counsel, however, Defendants' counsel will refrain from rash judgment based on speculation regarding Plaintiffs' positions and motives regarding case value and settlement. Defendants' counteroffers were issue driven. Defendants are not under any obligation to offer millions of dollars to settle this case simply to satisfy the desires of Plaintiffs and their counsel.

desire to flood this Court with various meritless motions." Defendants' Motions speak for themselves.

- Settlement negotiations have stalled at this point. A future, private mediation has yet to be scheduled.

### 2. **Plaintiffs' Attempted Control Of Defendants' Attorney-Multiple Client Relationship Negatively Affected Settlement Negotiations.**

As the Court is aware, Plaintiffs attempted to control the relationship and communications between Defendants during settlement negotiations. (*See* Docs. 233, 237, and 238). On March 17, 2021, the Court denied Plaintiffs' Motion Regarding the Conflict of Interest Among Defendants (Doc. 233) and, thus, rejected Plaintiffs' attempt to control Defendants in this manner. (Doc. 239). Communications preceding and attached to Plaintiffs' Motion for Separate Counsel (Doc. 233), in which Plaintiffs' counsel refused to identify an alleged, undefined "non-waivable" conflict stemming from undefined "evidentiary issues" and the briefing on the Motion, delayed settlement negotiations. Since January 29, 2021 and through the briefing on the Motion, Plaintiffs' counsel pledged that she would be making separate offers to Defendants. Defendants expected to receive such offers initially on the morning of March 24, 2021. Surprisingly, when negotiations commenced, Plaintiffs made no such offers to the individual Defendants and, instead, began with global settlement offers.

### 3. **Plaintiffs Did Not Negotiate In Good Faith**.

Ironically, Plaintiffs accuse Defendants of not participating in good faith settlement negotiations, when Plaintiffs' actions leading up to these negotiations and during negotiations indeed demonstrated bad faith.

#### a. Despite What Discovery Has Revealed, Plaintiffs' Began Negotiations By Demanding A $12,000,000 Aggregate Offer On Behalf Of The Three Remaining Plaintiffs.

This multi-million offer demonstrated no movement from Plaintiffs' previous position,

despite what discovery revealed.[4] Refusing to acknowledge any weakness in Plaintiffs' case, Plaintiffs' counsel made an initial offer that does not reflect reality and, specifically, the results of discovery. While Defendants understand that a party is the master of its offer, under Plaintiffs' logic and in light of their criticisms of Defendants, Plaintiffs did not participate in good faith settlement negotiations for this reason alone. But there are more important reasons.

### b. Plaintiffs' Counsel Again Attempted to Control the Relationship and Communications Between And Among Defendants' Counsel and Defendants.

Despite the Court's denial of Plaintiffs' counsel's attempt to control the communications between Defendants' counsel and Defendants in a multiple client representation relationship, Plaintiffs' counsel still tried to do just that during negotiations. Plaintiffs' counsel made offers that specifically required that each Defendant-offeree to keep the offer they received "**confidential**". Moreover, she further demanded that they were "**not** to be discussed with or among the other Defendants". (emphasis in original). Thus, she attempted to make Defendants keep secrets in a multiple client relationship when there are no secrets among jointly represented parties. These illusory offers also required the individual Defendants to submit to "free talks", without counsel.

### c. Plaintiffs' Counsel Made Illusory Offers To The Individual Defendants That Were Fraught With Danger And Essentially Guaranteed The Individual Defendants Nothing.

In separate offers to the individual Defendants, Plaintiffs' counsel stated that it was Plaintiffs' "belief" that the individual Defendants had additional information that was adverse to the City of Glendale and the other individual Defendants. Of course, she offered absolutely no basis for this "belief", yet invited the individuals to engage in "free talks" outside the presence of counsel.[5] Plaintiffs' counsel also provided a *non-exhaustive* list of topics that she required the

---

[4] Defendants refer the Court to their Motion for Summary Judgment and Separate Statement of Facts which demonstrate the results of discovery that Plaintiffs ignore.
[5] In approximately 30 years of civil litigation, Defendants' counsel has never engaged in "free

- 8 -

individuals to discuss with her during these "free talks". She simply stated that "*we believe*" that the individual Defendants have *"additional evidentiary information"* on this non-exhaustive, laundry list of topics. Not only did she did not provide the basis of this belief(s), but she also has not disclosed any in litigation.

What's more, Plaintiffs' counsel has been claiming since January 29, 2021 that she "*believes"* that some, undefined "*evidentiary issues*" existed that she must discuss with Defendants *alone*. Plaintiffs' counsel could have, but did not ask the Court for permission to extend discovery to re-depose the individuals on these topics. *Why?*—because she either covered these issues or failed to do so in depositions, including Defendants' depositions. Plaintiffs' counsel's discovery efforts did not reveal facts to support her claims against Defendants. So, during settlement negotiations and, specifically, the intended "free talks", Plaintiffs' counsel sought to remedy shortfalls in her case in the face of an imminent summary judgment motion by attempting to speak with Defendants outside the presence of counsel. Incredibly, within these settlement negotiations, Plaintiffs' counsel boldly sought an opportunity to force the individual Defendants to contradict their sworn testimony. Shockingly, the irregularity of Plaintiffs' settlement offers did not stop there.

*These "free talks" were nothing more than an illusory trap for the unwary.* Plaintiffs' counsel not only appeared to promise to release the individuals, after speaking with each one separately and *alone*, but she also only pledged to dismiss them *if she decided* that the information that each Defendant provided to her was helpful to Plaintiffs' case. Within each illusory offer, Plaintiffs' counsel held all the cards, but guaranteed the individual Defendants nothing.

---

talks", offered "free talks", or previously entertained "free talks" in any civil matter. While these "free talks" might have a place in the realm of criminal law, they are out of place in this case and in civil litigation as a whole – **particularly when they infringe on the attorney client relationship, discovery is long closed in this action, and Plaintiffs' counsel already deposed all of the named Defendants under oath**. And the illusory aspect of these "free talks" makes them even more unacceptable.

- 9 -

### 4. Plaintiff's Counsel's Attempted Intrusion Into And Speculation Regarding The Attorney Client Relationship Between Defendants And Their Counsel Are Improper.

Finally, Plaintiffs' section of this Report is replete with speculation on a number of issues, including Defense counsel's motivations, intent, and communications with Defendants. Certainly, Plaintiffs' counsel makes some very negative, speculative assumptions regarding Defendants' counsel and his provision of advice to his clients relative to Plaintiffs' settlement offers. While those assumptions clearly insinuate impropriety on the part of Defendants' counsel, none occurred, of course. Nevertheless, despite Plaintiffs' counsel continued inquiry, Defendants' counsel's relationship and communications with his clients are simply not any of Plaintiffs' counsel's business.

***

In sum, Defendants participated in settlement negotiations in good faith. They entertained Plaintiffs' various settlement offers, including Plaintiffs' illusory offers, and presented counteroffers. Defendants rejected Plaintiffs' settlement offers. Plaintiffs rejected Defendants' settlement offers. This often happens. However, Defendants and their counsel take exception to the accusation that they participated in settlement talks in bad faith. The facts, as opposed to Plaintiffs' conjecture rooted in disappointment, demonstrate otherwise.

RESPECTFULLY SUBMITTED this 31st day of March, 2021.

ATTORNEYS FOR FREEDOM

By: */s/ Jody L. Broaddus*
    Jody L. Broaddus
    Marc J. Victor
    *Attorneys for Plaintiffs*

JONES, SKELTON & HOCHULI, P.L.C.


By: */s/ Joseph J. Poplizio*
    Joseph J. Popolizio
    Justin Ackerman
    Ian Beck
    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of March, 2021, I electronically transmitted the foregoing to the Clerk's office using the CM/ECF system for filing and transmittal of a Notice of Electronic filing to the following registrants to:

Joseph J. Popolizio
Justin Ackerman
Ian C. Beck
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004


By: */s/Heather Wilson*
    Heather Wilson