**Marc J. Victor, SBN 016064**
**Jody L. Broaddus, SN 020122**
ATTORNEYS FOR FREEDOM
3185 South Price Road
Chandler, Arizona 85248
Phone: (480) 755-7110
Fax: (480) 857-0150
Marc@AttorneyForFreedom.com
Jody@AttorneyForFreedom.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnny Wheatcroft and Anya Chapman, as husband and wife, and on behalf of minors J. W. and B. W., <br> Plaintiffs, <br> v. <br><br> City of Glendale, a municipal entity; Matt Schneider, in his official and individual capacities; Mark Lindsey, in his official and individual capacities; and Michael Fernandez, in his official and individual capacities; <br><br> Defendants. | Case No.: 2:18-cv-02347-SMB <br><br> **PLAINTIFFS' CONTROVERTING STATEMENT OF FACTS AND SEPARATE STATEMENT OF FACTS IN RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** <br><br> Oral argument requested. |

Pursuant to Ariz. R. Civ. P. 56, Plaintiff Johnny Wheatcroft ("Plaintiff"), individually, and on behalf of minors J.W. and B.W. (the "Minor Plaintiffs"), submit their controverting and separate statement of facts in response to Defendants' Separate Statement of Facts [Doc. 246]. Defendants' Separate Statement of Facts are referred to herein as "DSOF" and Plaintiffs' Separate Statement of Facts are referred to herein as "PSOF." Objections to relevance herein are meant to mean the information is irrelevant to the issues in the pending summary judgment motion.

## <u>CONTROVERTING STATEMENT OF FACTS</u>

The following numbered paragraphs correspond with the numbered paragraphs set forth in Defendants' Statement of Facts [Doc. 246].

1.      Disputed.    Objection - relevance.    Despite engaging in extensive discovery, Defendants never produced a copy of any arrest warrant.  While Plaintiff may have believed there was an arrest warrant, there is no evidence an arrest warrant existed.

2.      Disputed.  Objection - not supported by Defendants' citations.  *See* PSOF 1 below.

3.      Not disputed.

4.      Disputed.  *See* PSOF 2 below.

5.      Disputed.  *See* PSOF 2 below.

6.      Not disputed with clarification.  Plaintiffs do not dispute the listed persons were occupants of the Ford Taurus when Schneider and Lindsey first approached the vehicle.

7.      Not disputed for purposes of the pending summary judgment motion.

8.      Not disputed.  Objection – relevance.

9.      Not disputed.  Objection – relevance.

10.     Disputed. Objection – foundation. *See* PSOF 3 below.

11.     Disputed. Objection - based on inadmissible evidence, lack of foundation, and based on conjecture.  *See* PSOF 4 below.

12.     Disputed.  *See* PSOF 5 below.

13.     Disputed.  *See* PSOF 5 below.

14.     Not disputed with clarification.   Lindsey approached the vehicle shortly Schneider. Exhibits ("Ex.") 1, 2, and 3, Schneider's video, Lindsey's video, and the Motel Video.

15.     Disputed as to any purported safety issue.  *See* PSOF 6 below.

16.     Not disputed with clarification.  Schneider went straight to the front seat passenger door, but Lindsey approached the drivers' door until shortly thereafter. Ex. 1, 2, and 3. the videos.

17.     Disputed.  *See* PSOF 7 below.

18.     Disputed.  *See* PSOF 7 below.

19.     Not disputed for purposes of the pending summary judgment motion.

20.     Not disputed with clarification. Plaintiffs do not dispute this alleged statement of fact relates to his initial response to Schneider's request for identification.

21.     Not disputed.

22.     Disputed as to Plaintiff becoming increasingly agitated. *See* PSOF 8 below. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

23.     Disputed. *See* PSOF 8 below.

24.     Disputed that Plaintiff was reaching into his backpack. *See* PSOF 9 below.

25.     Not disputed with clarification. If this alleged fact relates to Schneider's request to not reach into his backpack, then Plaintiffs do not dispute Plaintiff made that statement.

26.     Disputed. Ex. 1, Schneider video. In addition, *see* PSOF 9 below.

27.     No disputed but see PSOF 9 below.

28.     Disputed. Ex. 4, Schneider depo at p 148. Ex. 1, Schneider's video. *See* PSOF 10.

29.     Disputed. Ex. 1, Schneider's video. *See also* PSOF 9 below.

30.     Disputed. Ex. 1, Schneider's video. *See also* PSOF 9 and 11 below.

31.     Not disputed, but objection – relevance as to whether the driver had a license.

32.     Not disputed, but objection – relevance.

33.     Not disputed.

34.     Disputed. Objection – relevance. *See* PSOF 12 below. Ex. 1, 2, and 3, the videos.

35.     Disputed. *See* PSOF 9 through 12 below. Ex. 1, 2, and 3, the videos.

36.     Disputed. Objection – relevance and foundation. Sgt. McDaniel lacks foundation to testify as what Schneider was seeing and whether the body cameras accurately captured the events. Further, the video footage speaks for itself. Ex. 1, 2, and 3, the videos.

37.     Disputed. *See* PSOF 9 through 11 below.

38.     Disputed. Objection – relevance and foundation. Sgt. McDaniel lacks foundation to testify to what events, if any, caused Schneider to have heightened awareness. See PSOF 9-13.

39.     Disputed.  *See* PSOF 9 through 11 below.  Schneider placed Plaintiff in an arm bar, which is intended to cause pain. Ex. 5 Lindsey depo at p. 229; Ex. 6, Fernandez depo at p. 134; Ex. 7, St. John depo at p. 120, 122, 124; Ex. 8, and Montgomery depo at p. 70, 74-79.

40.     Disputed. Ex. 1, Schneider's video.  Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.  Plaintiff was not resisting, tensing his arm, or pulling away.  See PSOF 9-13w.

41.     Disputed in part. Ex. 1, Schneider's video.  See PSOF 9-14 below.

42.     Plaintiffs do not dispute that Plaintiff said he was not going to fight or that Schneider re-holstered his taser. *See* PSOF 9-15 below. Ex. 1, Schneider's video.

43.     Disputed. Ex. 1, Schneider's video. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.  Objection as to foundation as to Sgt. McDaniel's testimony as he was not there and lacks proper foundation to testify about the events.  *See* PSOF 9-16 below.

44.     Disputed in part.  Ex. 1, Schneider's video. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.  Plaintiff denies Plaintiff was tensing up or resisting.  *See* PSOF 9-16 below.

45.     Disputed. Ex. 1, Schneider's video. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.  Plaintiff disputes he was tensing or resisting.  *See* PSOF 9-16 below.

46.     Not disputed as to the pending summary judgment motion only.

47.     Not disputed as to the pending summary judgment motion only.

48.     Not disputed as to the pending summary judgment motion only.

49.     Disputed.  Ex. 1, 2, and 3, the videos.  *See* PSOF 9-16.  Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

50.     Disputed.  Ex. 1, 2, and 3, the videos.  Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.  *See* PSOF 9-16 below.

51.     Disputed in part.  Ex. 1, 2, and 3, the videos. Plaintiff disputes he was resisting in any way or that Defendants were trying to secure compliance.  Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.  *See* PSOF 9-16 below.

52.     Disputed in part.  Ex. 1, 2, and 3, the videos. Plaintiffs dispute the use of force was warranted, was to gain compliance or control, or was to avoid injury. *See* PSOF 9-16.

53.     Disputed in part. Plaintiffs dispute Schneider and Lindsey were lawfully attempting to detain Plaintiff. *See* PSOF 9-16.  While irrelevant, Plaintiffs do not dispute Chapman reentered the vehicle and saw her husband being tortured by the Defendants.  Ex. 1, 2, and 3, the videos. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

54.     Plaintiffs do not dispute Anya had a bag containing sodas, but object as to relevance.

55.     Disputed in part.  Objection – relevance.  Plaintiffs dispute Chapman violently struck Lindsey.  While Defendants were attacking her husband, Chapman was between the front seats of the vehicl.  Lindsey stepped back and slipped on a water bottle that was thrown by another passenger in the car, causing Lindsey to fall to the ground. Ex. 1, 2, and 3, the videos.

56.     Disputed. Objection - relevance. *See* resps. to DSOF 55. Ex. 1, 2, and 3, the videos.

57.     Disputed in part.  Objection – relevance.  Plaintiffs do not dispute that Lindsey fell to the ground and did nothing further. *See* above response to DSOF 55. Ex. 1, 2, and 3, the videos.

58.     Disputed in part.  Plaintiff disputes Schneider's self-serving statement that he was trying to control the situation. Ex. 1, 2, and 3, the videos.  See also PSOF 9-16 below.

59.     Disputed. *See* above response to DSOF 58.  Ex. 1, 2, and 3, the videos.

60.     Disputed.  See above responses to DSOF 58 and 59.  Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

61.     Disputed in part. *See* Defendants SOF [Doc. 246] at Ex. 15 at p. 413, which states there was *likely* a battery problem, which does not mean there was a problem.

62.     Disputed as Plaintiff testified about the painful tasing.  Objection – relevance.  Ex. 9, Wheatcroft depo at p. 412, and Ex. 1, Schneider body cam.

63.     Disputed in part as Plaintiff testified about the painful tasing.  Objection – relevance Ex. 9, Wheatcroft depo at p. 412, and Ex. 1, Schneider body cam.

64. Not disputed for purposes of the pending summary judgment motion.

65. Disputed in part. Plaintiff does not dispute Fernandez deployed his taser, but disputes Schneider's taser failed. Ex. 1, 2, and 3, the videos.

66. Disputed in part. Ex. 6, Fernandez depo at p. 153 where he blames Ms. Chapman for knocking out Lindsey.

67. Not disputed. The taser electrocuted Plaintiff. Ex. 1, 2, and 3, the videos.

68. Not disputed. The taser electrocuted Plaintiff. Ex. 1, 2, and 3, the videos.

69. Disputed. Plaintiff was not resisting. Ex. 1, 2, and 3, the videos. *See* PSOF 9-16 below. Objection as to foundation as to the citation to McDaniel's deposition.

70. Disputed. Ex. 1, 2, and 3, the videos. *See* PSOF 9-16 below.

71. Disputed. Ex. 1, Schneider's video. Plaintiff was in handcuffs before Schneider drive stuns Plaintiff.

72. Disputed, Ex. 1, Schneider's video. See also PSOF 9 below.

73. Disputed. Ex. 1, Schneider's video, which confirms Plaintiff was already removed from the vehicle when Fernandez tased and handcuffed Plaintiff.

74. Not disputed for purposes of the pending summary judgment motion. However, Plaintiffs object to the phrase "easily" and the video speaks for itself. Ex. 1, Schneider's video.

75. Not disputed for purposes of the pending summary judgment motion.

76. Disputed in part. Plaintiffs do not dispute Fernandez placed his body weight on Plaintiff but dispute Plaintiff was continuing to struggle. Ex. 1, Schneider's video.

77. Disputed. Ex. 9, Wheatcroft depo at p. 436-49. Ex. 1, Schneider's video. Objection – foundation at to Defendants' citation to McDaniel's deposition as he was not there and he cannot testify as to what Plaintiff was seeing or what Plaintiff was purportedly thinking.

78. Disputed. *See* above response to DSOF 77. Ex. 9, Wheatcroft depo at p. 436-49. Ex. 1, Schneider's video.

79.     Disputed in part.  *See* above response to DSOF 77.  Plaintiffs do not dispute that Schneider was calling B.W. "buddy" while torturing his father. Ex. 1, Schneider's video.

80.     Disputed. Ex. 1, Schneider's video. Ex. 9, Wheatcroft at p. 435-7, 440-3, 452-3.

81.     Disputed.  Schneider pulled down Plaintiff's shorts then used his taser to stun Plaintiff in the testicles. Ex. 1, Schneider's video. Ex. 9, Wheatcroft at pp. 435-7, 440-3, 452-3.

82.     Disputed in part.  *See* above response to DSOF 23 and 81, and PSOF 9 below.

83.     Disputed.  *See* above response to DSOF 81 and 82 above.

84.     Disputed.  *See* above response to DSOF 81 and 82 above.

85.     Disputed in part.  *See* above responses to DSOF 81 and 82 above.

86.     Disputed with clarification.  Plaintiffs do not dispute Schneider made the statement using offensive language or threatened additional taser use by placing his taser on Plaintiff's penis. Ex. 1, Schneider's video.

87.     Disputed in part.  Plaintiffs do not dispute Defendants arrested Plaintiff but dispute he was fighting. *See* above responses to DSOF 77 through 81. Ex. 1, Schneider's video.

88.     Disputed in part.  Objection – mischaracterizes the evidence, vague and ambiguous, and seeks a factual conclusion by the trier of fact.  Plaintiffs also dispute the implication that this matter was due to any conduct by Plaintiff. *See* above responses to 23, 35, 39 through 45, and 49 through 52, 58, 70 through 73, and 76 through 87. Ex. 1, Schneider's video.

89.     Disputed in part.  Plaintiffs do not deny these officers have asserted those allegations, but they dispute Defendants did not have time to think or deliberate. Ex. 1, 2, and 3 the Schneider video, Lindsey video, and Motel video.

90.     Disputed in part.  Defendants repeatedly electrocuted Plaintiff with tasers causing considerable pain. Ex. 1, Schneider's video. Ex. 9, Wheatcroft at pp. 435-7, 440-3, 452-3.

91.     Disputed. Ex. 1, Schneider's video.  In addition, *see* Ex. 10, 11, and 12, the taser reports for Schneider, Lindsey, and Fernandez.

92.     Not disputed.

93.     Disputed.  Plaintiffs dispute the shortness of breath was his sole injury and dispute Glendale Fire provided treatment for all injuries sustained as a result of Defendants' wrongful conduct.  Plaintiff had painful injuries to his legs and other parts of his body, including his testicles. Ex. 1, Schneider video.  Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

94.     Disputed.  Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

95.     Not disputed for purposes of the pending summary judgment motion only.

96.     Plaintiffs do not dispute the Minor Plaintiffs did not receive professional heath care or treatment for purposes of the pending summary judgment motion only.

97.     Disputed.  *See* PSOF 75-82 below.

98.     Disputed in part.  Objection – relevance.  *See* PSOF 17 below.

99.     Not disputed.  Objection – relevance.  *See* above response to DSOF 98.

100.    Not disputed for purposes of the summary judgment motion.  Objection as to relevance of charges against Anya Chapman.

101.    Not disputed for purposes of the summary judgment motion.  Objection – relevance.

102.    Not disputed with clarification.  Plaintiff was charged and criminal proceedings were commenced against him.  After spending about 3 months in jail, the charges were dismissed in favor of Plaintiff.  Ex. 9, Wheatcroft deposition p. 208.

103.    Not disputed with clarification.  Objection – relevance.  Anya Chapman plead guilty so she could return home to her family.  Ex. 14, Chapman depo at p. 72.

104.    Not disputed for purposes of the pending summary judgment motion.

105.    Not disputed but this alleged fact is vague and ambiguous as to the types of training, the types of policies, the areas of training, and the term "regularly."

106.    *See* response to DSOF 105 above.

107.    Not disputed for purposes of the pending summary judgment motion.

108. Not disputed for purposes of the pending summary judgment motion.

109. Not disputed for purposes of summary judgment. *See* response to DSOF 105.

110. Not disputed for purposes of the pending summary judgment motion.

111. Not disputed with clarification. Prior to the incident, Defendant Glendale did not take steps to discipline Defendants Schneider, Lindsey, or Fernandez for use of force violations.

112. Not disputed for purposes of the pending summary judgment motion.

113. Not disputed but see PSOF 18 below.

114. Disputed in part. Objection – calls for a legal conclusion. Plaintiff testified in agreement with defense counsel that an indictment is an indication of probable cause, but not that it created a presumption or demonstrates probable cause. Ex. 9, Wheatcroft depo at p. 43, 48.

115. Disputed. Ex. 1, Schneider's video. Ex. 9, Wheatcroft at pp. 412, 434-39, 389, 453.

116. Disputed in part. *See* above responses to DSOF 39 and 115. Ex. 1, Schneider's video. Ex. 9, Wheatcroft depo at p. 412, 434-39, 389, 453.

117. Disputed. Ex. 1, Schneider's video. Ex. 9, Wheatcroft at p. 412, 434-39, 389, 453.

118. Disputed in part. Ex. 1, Schneider's video. Lindsey didn't state he had a taser on his shoulder.

119. Disputed. Objection – relevance, misleading, and seeks a legal conclusion as to what facts are relevant to which causes of action. Defense counsel was attempting to "pigeon-hole" the Plaintiff by asking him which facts apply to which causes of action. This would require Plaintiff to have legal knowledge and expertise to understand the elements of each cause of action, as well as every fact in this case. Moreover, this is a wrongful attempt to invade the attorney-client privilege as to discussions the client had with counsel as to the basis for legal claims and the facts that support such claims. Finally, Plaintiffs' Separate Statement of Facts sets forth facts and evidence supporting Plaintiffs' claims with regard to the pending summary judgment motion.

**PLAINTIFFS' SEPARATE STATEMENT OF FACTS**

1  1. The citation does not support this allegation. The cited testimony provides, during 2017, Lindsey was a part of the NRS unit that dealt with problems within neighborhoods and tasked with various community projects. The exhibits do not support for the allegation that "On July 26, 2017, Glendale Police Officers were conducting intensive patrol due to increased crime reported in the area." *See* Defendants' Statement of Facts [Doc. 246] at Ex. 4.

2. Schneider could not have seen a purported traffic violation. Sgt. Flosman reviewed the videos, interviewed various persons including Schneider, and actually went to the scene, then concluded it was unlikely Schneider could have seen the vehicle turn into the parking lot. Schneider testified he could not see (1) the vehicle 100 feet before the turn to know whether a turn signal was used, or (2) whether there was any other traffic on the road that could have been affected by a turn signal. Ex. 1, 2, and 3, the videos. Ex. 4, Schneider depo at p. 42-44. Ex. 15, Flosman depo at pp. 45-48, 55, 84. Ex. 16, Flosman's report.

3. Blackburn testified he entered the parking lot, saw the available parking spot closet to the Motel entrance, and backed into the parking spot, which he does as a habit. Defendants inappropriately attempt to use the officers' testimony to explain what Mr. Blackburn was thinking and his reason for backing into the parking spot. Obviously, the officers cannot testify about what Mr. Blackburn was thinking. Ex. 17, Blackburn depo at p. 150, 152.

4. There is no evidence whether the number of crimes in the area were uncommon for the population in that area or whether the crimes allegedly reported were actually crimes. There are two churches across the street from Motel, and Glendale conducts numerous civic events across the street from the Motel, including Glendale Glitters, Glendale's chocolate festivals, and numerous other public events. Glendale purposefully attempts to lure people for civic and public events to this area. Ex. 22, McClelland depo p. 59-60 and 65-69.

5. The only purported agreement disclosed by Defendants was an agreement that was entered into over a year after the subject incident. Also, the cited agreement only authorizes

Defendants to "enforce trespassing laws." *See* Defendants' SOF [Doc. 246] at Ex. 11.

6.     When approaching the vehicle, Lindsey did not indicate there was any safety issue and his conduct does not support any concerns as to any purported safety issue. Lindsey even told the passengers they could exit the vehicle if they wanted. *See* Ex. 2, Lindsey BWC at 1:28.

7.     Schneider did not come up with the alleged excuse of a seatbelt violation until almost 4 months after the incident when he was being interviewed by Sgt. Moody with internal affairs. Sgt. Mood quickly shot down Schneider's attempt to claim there was a seatbelt violation. The vehicle was stopped and parked on private property, and a seat belt is not required on private property. Schneider could not have seen a seatbelt violation since he never saw the vehicle, or its passengers, prior to the vehicle entering the motel property. Schneider could not see whether the seatbelt was latched or not at any time prior he approached the vehicle. Ex. 28, Moody report.

8.     Plaintiffs object to Defendants' citation to support this alleged fact as Schneider's testimony can't to explain what Plaintiff was feeling. Further, Plaintiff was not agitated. Ex. 1, Schneider video. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

9.     Schneider has already been proved to be dishonest, as exemplified by the video that shows Schneider could not have seen an alleged turn signal violation and creation of a new story about a lack of seatbelt almost 4 months after the incident. The video evidence does not show Plaintiff engaging in any illegal conduct or any conduct that would give any officer reasonable suspicion that Plaintiffs was engaged in any illegal act. Plaintiff was not being evasive or and he was not reaching into his backpack or between the seats. Schneider was simply making statements to create a false record. The citations relied upon by Defendants with regard to Lindsey, Fernandez, and Sgt. McDaniel lack foundation those officers did not see Plaintiff reach into his backpack. Ex. 1, 2 and 3, the videos. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

10.     Schneider testified Plaintiff had a soda in his left hand and money in his right hand. Ex. 4, Schneider depo at p. 148. Ex. 1, Schneider BWC.

11.     Plaintiff complied with Schneider's commands, as he did not reach into his backpack and did not reach between the seats at any time, including after Schneider's statements. Ex. 1, Schneider's video. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

12.     Plaintiffs dispute Plaintiff was becoming more agitated. The video footage speaks for itself. Ex. 1, Schneider's video. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

13.     Plaintiffs object to the citations relied upon by Defendants with regard to Lindsey, Fernandez, and Sgt. McDaniel as they lack foundation. This was not a valid traffic stop, which was known by Schneider, as he did not, and could not, see any purported traffic violation. Plaintiffs do not dispute that Schneider opened the vehicle door, indicating he wanted Plaintiff to exit the vehicle. Defendants contend Schneider opened the door to remove Plaintiff from the vehicle, but Schneider instructed him not to exit the vehicle. The video footage speaks for itself, as Schneider now claims he wanted Plaintiff to exit the vehicle, but he became abusive as Plaintiff was attempting to exit the vehicle. Ex. 1, 2 and 3, the videos

14.     Plaintiff did not tense his arm, pull away, or resist. Ex. 1, Schneider's video. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

15.     Plaintiffs dispute Schneider was attempting to deescalate the situation as set forth above. Ex. 1, 2, and 3, the videos.

16.     Plaintiffs do not dispute Schneider grabbed Plaintiff's wrist and placed him in a painful hold, or that Plaintiff, in response to Schneider's excessive and unwarranted use of force, asked Schneider "what the fuck are you doing." Plaintiff was not actively resisting. See PSOF 14.

17.     A small packet of methamphetamine was purportedly found under the front driver's seat of Blackburn's vehicle. Neither Plaintiff nor Anya Chapman None of the passengers knew anything about the packet. The videos provided by the Defendants conspicuously fail to include the search of the vehicle when the packet was purportedly found. The only persons who knew of the packet were the Defendants and a jury is allowed to consider they planted the packet in the

vehicle. Ex. 13, photos of the car and packet. Ex. 14, Chapman depo at p. 387.

18.     While the evidence confirmed the Schneider violated additional policies, Defendant Glendale excused and ratified his conduct by accepting his conduct and refusing to properly discipline him. Glendale's policy required Schneider discipline for 5 days for his class 6 offense, yet Chief St. John only disciplined him for 30 hours. Ex. 25, Chart of Sanctions. Ex. 26, Response to Resistance Report. Ex. 27, Notice of Suspension.

19.     On July 26, 2017, at about 7:32 p.m., Plaintiffs went to a Motel 6 to get a room so they could enjoy some family time together. Ex. 9, Wheatcroft depo at p. 220-223. Ex. 14, Chapman depo at p. 51-52.

20.     Plaintiff was a front seat passenger in a Ford Taurus, minors J.W. and B.W, along with his wife Anya Chapman, were in the back seat of the vehicle, and Shawn Blackburn was the driver. Ex. 9, Wheatcroft depo at p. 251-252. Ex. 14, Chapman depo at p. 295-296, 304. Ex. 17, Blackburn depo at p. 14-15. Ex. 9, Wheatcroft depo at p. 251-252.

21.     After the vehicle backed into a parking spot at the Motel 6, but before they exited the vehicle, Plaintiffs were approached by Glendale's officers, Schneider and Lindsey. Ex. 1, 2 and 3, the videos. Ex. 9, Wheatcroft depo at p. 253-254.

22.     Schneider, who claimed there was a turn signal violation and was the first officer to approach the car, did not approach the driver of the vehicle who purportedly failed to use his turn signal, but went directly to the front seat passenger. Ex. 1, 2 and 3, the videos.

23.     When asked, Plaintiff informed Schneider they were getting a room at the hotel. Ex. 9, Wheatcroft depo at p. 315. Ex. 1, Schneider video.

24.     Schneider demanded identification from everyone in the vehicle, and Plaintiff asked why he needed to give the officer identification since he did nothing wrong. Ex. 1 and 2 Schneider's video and Lindsey's video. Ex. 9, Wheatcroft depo at p. 317, 318.

25.     Schneider falsely told Plaintiff that if you are a passenger in a vehicle you need to

have your identification and he was entitled to their identification because he made a traffic stop on the vehicle, even though no lawful traffic stop was made.  Ex. 1, Schneider's video.

26.     Schneider retaliated by threatening to take Plaintiff down to the police station even though Plaintiff had not committed any crime and there was no probable cause to suspect him of any illegal activity. Ex. 1, Schneider's video.

27.     Although Plaintiff never reached into his bag or stuffed anything between the seats, Schneider told Plaintiff not to reach into his bag or stuff anything between the seats, and Plaintiff complied by not reaching in his bag or stuffing anything between the seats at any time after Schneider's request.  Ex. 1, 2 and 3, the videos. Ex. 9, Wheatcroft depo at p. 367.

28.     Despite never asking Plaintiff to exit the vehicle, Schneider reached inside the vehicle and opened the passenger door of the vehicle. Ex. 1, 2 and 3, the videos Ex. 9, Wheatcroft depo at p. 266, 287.

29.     As Plaintiff placed his foot outside to exit the vehicle, Schneider instructed him not to exit the vehicle, then placed a taser between Plaintiff's neck and right shoulder and asked if he was going to fight, and Plaintiff confirmed he was not.  Ex. 1, 2 and 3, Schneider's video, Lindsey's video and motel video. Ex. 9, Wheatcroft depo at p. 374-375, 378.

30.     Schneider holstered his taser, then grabbed and twisted Plaintiff's arm behind his back while pushing his shoulder forward which caused Plaintiff to experience significant pain. Ex. 1, 2 and 3, the videos. Ex. 9, Wheatcroft depo at p. 403-404.

31.     The arm maneuver is called an armbar and is intended to cause pain.  See Ex. 6, Fernandez depo at p. 134, Ex. 5, Lindsey depo at p. 229, Ex. 7, St. John depo at p. 120, 122, 124, and Ex. 8, Montgomery depo at p. 70, 74-79.

32.     While Plaintiff was restrained by the seat belt, Lindsey assisted Schneider in beginning to physically remove Plaintiff from the vehicle. Ex. 1, 2 and 3, the videos.

33.     Lindsey placed his taser on Plaintiff while Schneider shoved Plaintiff's head down

toward his lap while his arm still twisted behind his back, causing Plaintiff additional pain. Ex. 1, 2 and 3, the videos.

34. Lindsey then tased Plaintiff several times in the back, even though Plaintiff was still tangled and restrained in his seatbelt and his arm was contorted behind his back by Schneider. Ex. 1, 2 and 3, the videos.

35. Anya and the Minor Plaintiffs were screaming and watching in horror as these events transpired and repeatedly asked the officers to stop. Ex. 1, 2 and 3, the videos.

36. As Defendants Schneider and Lindsey continued to assault Plaintiff, Anya moved her torso area into the area between the front seats. Ex. 1, 2 and 3, the videos. Ex. 14, Chapman depo at p. 331.

37. A water bottle came from the back seat toward the officers, then fell to the ground where Lindsey slipped on the bottle and fell. Ex. 1, 2 and 3, the videos. Ex. 9, Wheatcroft depo at p. 275-276.

38. Plaintiff was then seated on the ground tangled in the seatbelt, leaning with his back on the open door of the vehicle in a non-threatening manner. Ex. 1, 2 and 3, the videos. Ex. 9, Wheatcroft depo at p. 404. Ex. 6, Fernandez deposition at p. 141.

39. Schneider backed up approximately 5 or 6 feet away then activated his taser in dart-mode at Plaintiff's chest as Plaintiff was idly sitting in a non-threatening manner on the ground. Ex. 1, 2 and 3, the videos.

40. Despite arriving on the scene and seeing Schneider deploy his taser at Plaintiff, Fernandez did nothing to protect Plaintiff. Rather, Fernandez applied his taser to Plaintiff. Ex. 1, 2 and 3, the videos.

41. Fernandez rolled Plaintiff over so that his face was in the front passenger's seat with his knees on the asphalt, and then handcuffed with his hands behind his back. Ex. 1 and 3, Schneider's video and the motel video.

42.     Schneider continued to sporadically tase Plaintiff even though Plaintiff's hands were handcuffed behind his back. Ex. 6, Fernandez deposition at p. 140, 144. Ex. 1, Schneider's video. Ex. 1 and 3, Schneider's video and the motel video.

43.     Fernandez attempted to drag Plaintiff toward the rear of the vehicle, while Plaintiff and the passengers repeatedly stated that hewas caught in the seatbelt. Ex. 1, Schneider video.

44.     Eventually, J.W. then climbed over into the front passenger seat of the vehicle to release his father from the seatbelt. Ex. 1, Schneider's video.

45.     Schneider commanded J.W. to get out of the vehicle and J.W., frozen in fear, hysterically broke into tears and collapsed into the passenger seat. Ex. 1, Schneider's video.

46.     After Plaintiff was finally released from the seatbelt, but still handcuffed, Fernandez took Plaintiff down onto the asphalt while Schneider continued to tase him, while also kicking him in the groin. Ex. 1 and 3, Schneider's video and the motel video. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

47.     Given the temperature of the asphalt, the officers' contorting his body, and the tasing, Plaintiff was writhing in pain while his family watched and screamed for the officers to stop. Ex. 1 and 3, Schneider's video and the motel video.

48.     As Plaintiff was prone and handcuffed on the ground, Schneider pulled down Plaintiff's shorts and tased his testicles, which was significantly and excruciatingly painful. Minor J.W. was within a few feet of Schneider as he stomped on and kicked Plaintiff in the testicles while he was handcuffed and laying on the ground. Ex. 1 and 3, Schneider's video and the motel video. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

49.     As Plaintiff was handcuffed on the ground, Glendale's officers began to forcibly remove the taser prongs that were embedded into his skin, which caused Plaintiff to scream in agony. Ex. 1 and 3, Schneider's video and the motel video.

50.     Schneider then placed his taser on Plaintiff's penis and screamed, "Keep fighting

and you're going to get it again! You want it again? Shut your mouth! I'm done fucking around with you!" Ex. 1, Schneider's video.

51.　Glendale's officers lifted Plaintiff to his feet and continued to pull out the taser prongs, as he continued to scream in agony. Schneider then told him "relax, stop being a big baby." Glendale's officers then placed Plaintiff into the back of a patrol vehicle and transported him to the Glendale City Jail. Ex. 1 and 3, Schneider's video and the motel video.

52.　None of the other officers made any attempt or took any steps to intervene and protect Plaintiff against Schneider, Lindsey, and Fernandez's excessive force, despite their duty and knowledge to do so. Ex. 1, 2, and 3, the videos. Ex. 6, Fernandez depo at p.22-24. Ex. 5 Lindsey depo at p. 54.

53.　Plaintiff not engaged in any crime, there were no articulable facts he engaged in any crime, and he did not impose any immediate threat to the officers. Ex. 1, 2, and 3, the videos.

54.　Further, Plaintiff was complying with the officers' commands and not resisting. Ex. 1, 2 and 3, the videos. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

55.　Defendants wrongfully arrested and charged Plaintiff with aggravated assault, a class 5 felony, and resisting arrest, a class 6 felony, and he remained in jail for several months before the charges were dismissed by the prosecution. DSOF 100 and 102.

56.　At no time prior to the alleged traffic stop did Defendants activate their lights or siren for any purported traffic violation, as would be required for a traffic stop under Glendale's policies and procedures. Ex. 3, the motel video. Ex. 28, Moody's report.

57.　Defendants could not have seen any turn signal violation because they were on the back side of the building with no view of the vehicle either approaching the turn, making the turn, or determining whether traffic would have been affected by a turn. Ex. 3, the motel video.

58.　Defendants' expert, who has never testified at trial or in a deposition (prior to this case) and who has only been retained as expert on a few occasions and solely by Defendants'

attorney, disagreed with both Arizona court and federal court cases that clearly state a turn signal violation requires other traffic to be affected. Ex. 22, McLelland depo at p. 130-132.

59. Schneider could not have seen the vehicle until after it completed its turn into the Motel 6 parking lot. Ex. 2, motel video. Ex. 21, Hynes' Rebuttal report at p. 4.

60. Schneider did not see the vehicle at any time prior to the turn, and he did not see any other traffic that could have been affected by a turn. Ex. 4, Schneider depo at p. 44.

61. Defendant Glendale had a practice of stopping vehicles for turn signal violations even with the elements were not met. Ex. 6, Fernadez depo at 48, 54. Ex. 33, Labrant depo at p. 84-5. Ex. 34, Levander at p. 60-1. Ex. 35, Briggs depo at p. 76

62. Schneider has an extensive history of violating policies and procedures. Ex. 6, Fernandez depo at p. 92. Ex. 35, Briggs depo at p. 26-27, 73-5. Ex. 7, St. John depo at p. 63-70.

63. Schneider will "just give up and go to the taser" even when it is against Glendale's policies. Ex. 4, Schneider depo at p. 166.

64. Schneider has a pattern of dishonesty as exemplified by the false and dishonest statements made by Schneider including, his claim of seeing a turn signal violation, creation of a new position of a lack of seatbelt by Plaintiff almost 4 months after the incident, his claim that Plaintiff put his hand between the seat and center console and was 'repeatedly' reaching into his bag, threatening to arrest Plaintiff for not providing id, and his claim Plaintiff was resisting. Ex. 1, 2 and 3, the videos. Ex. 9, Wheatcroft depo at pp. 412, 434-39, 389, 453.

65. Assistant Police Chief Rich LeVander stated "None of Matt's [Schneider's] excuses hold water with me." Ex. 32.

66. To justify Defendants actions, Defendants rely on an alleged trespass agreement form that was not in effect until over a year after the subject incident. DSOF 12.

67. The trespass agreement only authorizes the Glendale Police Department to enforce trespassing laws under A.R.S.§ 13-1502(A). DSOF 12.

68.     There is no evidence that Plaintiffs were ever requested to leave the property at any time or that they were not lawfully on the premises.  Ex. 1, Schneider video.

69.     Defendants were not enforcing, and could not have been enforcing, trespassing laws under A.R.S.§ 13-1502(A).  Ex. 1, Schneider video.

70.     Police Chief Rick St. John was the decision make for Defendant Glendale as to its policies and procedures for police officers, and the police chief has the final say on any policies and procedures.  Ex. 7, St. John Depo at p. 36.

71.     Glendale, including its mayor, issued various press releases stating their officers are held to the highest professional standards and that they reviewed the officers' conduct, yet it only disciplined one officer for one wrongful act while condoning and approving the other numerous wrongful acts. Ex. 29, 30, and 31, the press releases.

72.     Despite claiming their officers are held to the highest professional standards, and despite the numerous constitutional violations, including excessive force, wrongful arrest, and wrongful search and seizure, Defendant Glendale did not terminate or reprimand Defendants Schneider, Lindsey, or Fernandez, with the exception of a single tase by Schneider. Ex. 29, 30, and 31, the press releases.

73.     As a result of the repeated trauma, Plaintiff has been severely injured, which includes functional issues with his penis.  Ex. 9, Wheatcroft depo at p. 457.  Ex. 14, Chapman depo at pp. 53-4, 252-3.

74.     The horrifying events transpired in front of Minor Plaintiffs, who were terrified, screaming, and traumatized by the officers' atrocious conduct, and the Minor Plaintiffs were in the just feet away from the officers attacking their father. Ex. 1, 2, and 3,, the videos.

75.     JW had bruising on his arm as a result of Schneider forcefully grabbing him to pull him out of the vehicle.  Ex. 20, JW depo at 248.

76.     Due to the incident, the Minor Plaintiffs are afraid to leave their house, have anxiety

when they see a cop, and 'freak out' when their mom leaves the house because they think the cops will beat her up. Ex. 14, Chapman depo at pp. 194-5, 247. Ex. 20, JW depo at p. 57-58.

77.     They would not even go outside to play basketball because they were too scared. They also experienced violent nightmares. Ex. 20, JW depo at p. 57-58. Ex. 14, Chapman depo at p. 246-7. Ex. 17, Nash depo at p. 106-11, 130-2. Ex. 19, BW depo at p. 214-216.

78.     To this day, the Minor Plaintiffs are terrified of cops and they now have lost respect for authority. Ex. 14, Chapman depo at p. 247-8. Ex. 17, Nash depo at p. 107, 109-11.

79.     Further, BW is scared and becomes anxious when he see someone who resembles the officers who tortured his dad. Ex. 20, JW depo at p. 252-253.

80.     BW is still terrified cops are going to tase him and he will duck down when he sees an officer so they don't see him because he is so scared. Ex. 19, BW depo at p. 214-216, 228.

81.     Also, the boys further are more snippy, their attitudes have changed, and J.W. has had issues with school including getting suspended. Ex. 17, Blackburn depo at. 113.

82.     The Minor Plaintiffs were deprived of their father after he was arrested and jailed, and they worried about them and would ask their grandma when their parents would be home. Ex. 18, Nash deposition at p. 104, 106, 112.

RESPECTFULLY SUBMITTED this 3rd day of May, 2021.

ATTORNEYS FOR FREEDOM

By: _/s/ Jody L. Broaddus_____
    Jody L. Broaddus, Esq.
    Marc J. Victor, Esq.
    *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically transmitted the foregoing to the Clerk's office using the CM/ECF system for filing and transmittal of the foregoing filing to the following registrants, and a copy was also sent by first class mail to:

Joseph J. Popolizio
Justin M. Ackerman
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004

By: */s/ Heather Wilson* _____

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically transmitted the foregoing to the Clerk's office using the CM/ECF system for filing and transmittal of a Notice of Electronic filing to the following registrants, and a copy was also sent by first class mail to:

Joseph J. Popolizio
Justin M. Ackerman
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004

By: */s/ Angie Marchionda* _____