UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| **Johnny Wheatcroft, et al.,** ) | |
| ) | No. 2:18-cv-02347-MTL |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | Phoenix, Arizona |
| **City of Glendale, et al.,** ) | October 3, 2022 |
| ) | 3:01 p.m. |
| Defendants. ) | |
| _____ ) | |

BEFORE:  THE HONORABLE MICHAEL T. LIBURDI, JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS

STATUS CONFERENCE


For the Plaintiffs:
    ATTORNEYS FOR FREEDOM LAW FIRM
    By:  **Ms. Jody Lynn Broaddus, Esq. (Telephonic)**
    3185 South Price Road
    Chandler, Arizona  85248


For the Defendants:
    JONES, SKELTON & HOCHULI
    By:  **Mr. Joseph John Popolizio, Esq.**
    40 North Central Avenue, Suite 2700
    Phoenix, Arizona  85004

Official Court Reporter:
Cathy J. Taylor, RPR, CRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

# P R O C E E D I N G S

1

2          (Court was called to order by the courtroom deputy.)

3          THE COURT:  Be seated.

4          THE COURTROOM DEPUTY:  Civil Case 18-2347, Johnny

5    Wheatcroft vs. The City of Glendale and others.  This is the

6    time set for status conference.

7          Counsel, please announce your presence for the record

8    starting with the plaintiff.

9          MS. BROADDUS:  Good afternoon, Your Honor.  This is

10   Jody Broaddus on behalf of the plaintiff.

11          MR. POPOLIZIO:  Good afternoon, Your Honor.  Joe

12   Popolizio on behalf of defendants.

13          THE COURT:  All right.  Good afternoon, counsel.

14   Congratulations are in order, I think.

15          MR. POPOLIZIO:  Perhaps, Your Honor.  Yes.

16          THE COURT:  Perhaps.  Okay.

17          You could have a seat, Mr. Popolizio, unless you enjoy

18   standing.  It's up to you.

19          MR. POPOLIZIO:  Either, but I'll sit.

20          THE COURT:  Okay.  So I did receive your notice -- the

21   notice of settlement, and I did see the orders that

22   Judge Willett entered late last week.

23          Before I vacate the trial and the other hearings, I --

24   which I intend to do, obviously, I just wanted to see if there

25   were any remaining issues that counsel needed me to address.

1          MS. BROADDUS:  From the plaintiff, we absolutely do.

2    Yes, we do.  We have an issue that -- that requires your

3    attention.

4          As part of the settlement, when we were discussing the

5    settlement, we were going through those, we were -- the

6    plaintiff took the position that the minors' claims no longer

7    existed given the Court's ruling on the minors' state-based

8    claims.  Those have already been dismissed based on the Court's

9    rulings.

10          As for the only potentially remaining claim, which

11    would have been the -- the federal familial association claim,

12    that was related to the wrongful arrest, which the Court

13    disposed of through summary judgment.  And so it's our position

14    that at this point there are no remaining claims on behalf of

15    the -- the minor children.

16          And as part of this settlement, defendants have asked

17    that we get Court approval of a settlement on -- based on

18    behalf of the children.  And that kind of creates a hiccup for

19    us on the settlement because, first of all, there's no

20    settlement with the children because they're not part of -- we

21    don't believe that they're -- they're -- have any claims left,

22    so there's been no settlement of their claims.

23          The second part is -- well, it's two part:  A, it

24    requires Court approval to have a settlement with a minor,

25    which we don't have.  And we just -- the only thing we'd be

1    doing is -- is spending probably -- it takes about three months

2    out on average to get a probate set up through -- to get a

3    conservator appointed, which would be difficult in this case,

4    to have them say, hey, yes, there's no claims.  There's no

5    settlement regarding the claims.

6         And so we feel that given this scenario and given the

7    situation, since there's no kids' claims, there's nothing that

8    needs Court approval under Arizona law.

9         I've pulled up the statute, and it talks about the

10   minor children having claims, if they have a claim that's

11   settled, and it has to be approved by a probate court, and then

12   there's a difference in the monetary value as to whether -- how

13   they can do that.  But here we don't have it.

14        And so I guess we're looking for some direction from

15   the Court on whether we're going to need to have something --

16   some kind of -- something done with the minors separately.

17        And here -- here's -- another aspect of that is

18   defense counsel has said, well, go ahead and dismiss the

19   minors' claims.  Well, that would end up being a settlement to

20   dismiss their claims, because it would require approval from

21   both sides at this point and at this juncture.  So that would

22   end up being a settlement anyway.  So we can't dismiss the

23   claims without -- based on the defense perspective of, well, if

24   you have a settlement, you have to have the kids.  But we can't

25   unilaterally dismiss the plaintiffs', the minors' claims,

1    unless there's a settlement.

2         So either -- I guess we're just looking for Court --

3    the Court's direction if there's no minor claims left, then we

4    don't need Court approval to open up a probate separately.  We

5    can get this matter disposed of rather quickly.

6         THE COURT:  Okay.  Mr. Popolizio.

7         MR. POPOLIZIO:  Well, yes, Your Honor, the parties

8    disagree on this issue.  We've reached a settlement.  The

9    settlement, as -- as Judge Magistrate Willett's order

10   indicated, between all -- all parties.  All defendants with all

11   plaintiffs.  That's the way it was negotiated, and that's the

12   way it was memorialized by me in an email to -- to Ms. Broaddus

13   and by Judge Willett when Judge Willett sent her order, which I

14   believe is Document 415 in the record.  With regard to the

15   settlement, the settlement always included the minors.

16        So I think the question becomes this, Your Honor:  Is

17   there anything going to the minors?

18        During the settlement negotiations, we had nothing

19   filed.  The supplemental MIDP that you ordered, which plaintiff

20   then filed and said how it was tied.  The familial association

21   claim was filed to the wrongful arrest.  The wrongful arrest

22   claim you took care of in the summary judgment process in the

23   document, I think 394, where you ordered summary judgment in

24   favor of defendants on that claim.

25        So, yes, that's correct.  There's nothing that ties --

1    according to plaintiffs' admission in the filing, that would

2    tie the children's familial associations claim to anything left

3    in the lawsuit.  So, yes, that would go away.  But there's been

4    no orders of dismissal with regard to that or with regard to

5    the state law claims.  The state law claims were the emotional

6    distress claims of the -- of the minor plaintiffs.

7             So when we look at what was settled, we know that

8    there was a settlement amount.  We know that there is -- is --

9    the settlement was between all defendants and all plaintiffs,

10   negotiating as such, through Judge Willett.

11            So it comes to, all right, do we need Court approval?

12   Under the Gomez case, Your Honor -- and that's Gomez vs.

13   Maricopa County, 175 Arizona 469, the Court held that Arizona

14   law does not permit a parent acting solely as a parent to

15   compromise a right of action held by her minor children, a

16   child.

17            And so that's reflected -- and I think Ms. Broaddus --

18   Broaddus has referred to what would -- the probate rule,

19   Arizona Probate Court 53(a)(1) and (b)(1), where it talks about

20   the $10,000 amount; right?  So if you -- if you have a

21   settlement that is over $10,000, or $10,000 or over, then it

22   requires probate approval.  But there always is required when

23   it comes -- comes to minors Court approval for a settlement

24   involving minors.

25            Now, if -- say if that -- if that number was zero.

1   There is still a settlement.  There is still a waiver of

2   appellate rights that are going to be placed in that settlement

3   agreement.  So there is something, okay, there.  So,

4   regardless, if it is -- if -- if there are no claims left,

5   okay, and there's nothing that's going to be going to the minor

6   plaintiffs, or if it's something under $10,000, while the Court

7   can -- I submit you, Your Honor, can approve of the settlement

8   and we could -- we could go further.  If it's something over,

9   which I do not hear that it is, if I could read between the

10  lines coming through, then probate court approval will not be

11  necessary.

12          But the fact of the matter is some sort of -- of Court

13  approval will be necessary.  And you could probably imagine

14  that the defendants would like to wrap up this once.  And we

15  could do that here, but it's going to require that step.

16          THE COURT:  Okay.  So -- so I under- -- I understand.

17  Let me -- let me add a little bit more to the mix.

18          I -- I'm sure that the settlement agreement's going to

19  have a global release, release of claims; right?

20          MR. POPOLIZIO:  Yes.

21          THE COURT:  Okay.  So I -- you know, if I were in the

22  defendants' position, I would be concerned that since these

23  minors -- you know, the statute of limitations are tolled for

24  them when they're 18, unless there's -- unless this isn't done

25  correctly, that some claims might pop up when these children

1   reach adulthood.

2         Is that -- is that a valid concern?

3         MR. POPOLIZIO:  Yes, Your Honor.  And even if -- even

4   if there weren't valid claims or -- or claims -- they were the

5   same claims or some sort of a claim popped up, we would still

6   have to deal with it in the future, and that would be unfair to

7   the plaintiff -- to the defendants.  Excuse me.

8         THE COURT:  Right.  Yes.  And so -- so the way I

9   would -- you know, if I were in -- I think if I were in the

10   defendants' shoes, I'd want to make sure that there's a global

11   release and that the release is executed by -- by somebody who

12   has authority to do so on behalf of the minors.  Maybe it's the

13   minor themselves, but it sounds like there has to be some sort

14   of judicial supervision over that, whether it's -- whether it's

15   this Court or the superior court's probate division.

16         So does that sound right, Mr. Popolizio --

17         MR. POPOLIZIO:  Yes, Your Honor.

18         THE COURT:  -- from your point of view?

19         Okay.  Okay.

20         And, Ms. Broaddus, why is it that you are -- are

21   disinclined to seeking some Court -- Court approval?

22         MS. BROADDUS:  Oh, there's two aspects, Your Honor:

23   First, when we were speaking with Judge Willett and going

24   through the settlement negotiations, we were clear with her

25   that the settlement did not involve the minors because the

1    minors no longer had claims.  The issues we have on setting up

2    a conservatorship are this:

3           Number 1 is the child's mother has a felony.  The

4    child's grandmother has a felony.  The child's father is in

5    prison.  They have grandparents that live in another state.

6    And I've dealt with this issue in the past on you can't have a

7    conservator appointed who has a felony conviction, number 1.

8    Number 2, they don't have somebody appointed out of state for

9    probate to act as a conservator.  So we are -- we kind of have

10   our hands tied on having a conservator appointed.

11          The second aspect is it takes about three

12   additional months.  So this case is going to be lingering for

13   at least a minimum of three more months to have that done.

14   There's also an additional cost.  It costs approximately an

15   additional $400 just for filing fees on top of that.  There's

16   probably about ten to 15 different documents that have to be --

17   well, about ten documents that have to be prepared along with

18   that as part of the conservatorship.  So those are some of the

19   issues that we're dealing with.

20          What we would probably propose is we were going to --

21   what I would assume would take care of this issue is when we

22   file the release and everything and all -- and all is taken

23   care of, there's going to be a stipulation to dismiss with

24   prejudice, which -- which would preclude any other claims.

25          There is no settlement on behalf of the -- I guess one

1    way we could -- there's two ways we can do it:  Number 1 is go

2    through the probate court and say, hey, we don't have any

3    claims left, but the parents are settling so we want to have

4    the Court approve this.  Or the father's settling.  So that's

5    one way we can handle it.

6         The opposite -- the other way we could handle this,

7    Your Honor, is a little bit different, and that is we could

8    request an order or a proposed order that based on the filings

9    that we -- that the rulings of this Court already, as well as

10   our supplemental MIDP that we filed on Thursday last week -- I

11   believe our deadline to file was on Friday.  We filed that on

12   Thursday, and I believe we sent you -- we also included that --

13   we eMessaged the Court with a copy -- that based on those

14   documents and the Court's rulings, the Court could issue an

15   order, whether under seal or not, that based on the Court's

16   order that the -- the Court could dismiss the minors at this

17   point and have a final judgment that would preclude us from

18   having to get a -- a settlement in the matter, like a probate

19   court approval or -- because you have to set up the probate

20   court to have the conservator appointed.

21        THE COURT:  Okay.  Well, I think I would need

22   supplemental briefing on -- on these issues.  I certainly

23   understand where both of you are -- are coming from concerning

24   the minors, but I don't want to do anything without the benefit

25   of research.  And I feel like the -- the parties need to start

1    that process.  So you're welcome to provide for -- to me

2    supplemental briefs.  You can -- you can do it jointly or

3    separately.  And just give me options on what you think I

4    should do.

5            I'll say this to -- to guide you:  I -- you know, I

6    know most of the claims of the minors had been disposed of on

7    dispositive motion briefing.  And then there was the one claim,

8    was it -- it was one state law claim that was the subject of a

9    motion in limine.

10           And what was that, Mr. Popolizio?  Was that their --

11   their intentional infliction of emotional distress claim or --

12           MR. POPOLIZIO:  Motion in limine number 14 from

13   defendants, Your Honor, covered both the intentional infliction

14   of emotional distress and then negligent infliction of

15   emotional distress claims for both minor plaintiffs, JW and BW.

16           THE COURT:  Okay.  And it was on the basis of the

17   state law common -- qualified immunity.  And -- and the

18   reasoning was there was no -- there was no evidence in the

19   record of -- of gross negligence, which is -- which would be

20   the exception to the qualified immunity doctrine under Arizona

21   law; is that right?

22           MR. POPOLIZIO:  That is correct, Your Honor.

23           THE COURT:  Okay.  So I -- I don't know -- you know, I

24   would -- I would be remiss if I drew some -- any conclusions as

25   to how those rulings would impact the minors' rights once they

1   reach the age of majority, so I would -- I would need counsel

2   and the parties to advise me on that.

3           MR. POPOLIZIO:  And, Your Honor, if I may?

4           THE COURT:  Yes, please.

5           MR. POPOLIZIO:  And that -- that is why I -- I've

6   addressed both with plaintiffs' counsel the concern the

7   defendants have with regard to appellate rights.  And, you

8   know, things -- although, as our communications back and forth

9   plaintiffs claimed that while those claims that we were just

10  talking about, the state law claims, were disposed of, well,

11  they weren't dismissed.  But even though, Your Honor, if we

12  were to enter -- if we were to enter into any settlement

13  agreement and getting a release of all claims, you'd be waiving

14  whatever appellate rights that you would have.  And at the end

15  of that, anyhow, we would get a situation to dismiss with

16  prejudice of all claims from all parties in the case anyhow

17  to -- I mean, that's going to happen anyhow.

18          With regard to the familial association claim, we

19  didn't have any clarification with regard to that claim until

20  really after the settlement was reached when the supplemental

21  filing was done pursuant to the Court's previous order where

22  plaintiffs explained to the Court what -- what I had asked in

23  the final settlement conference -- excuse me -- final pretrial

24  conference, what was that claim tethered to?

25          We got the answer to that, so -- but to set the record

1   straight, Your Honor, and to just, you know, refer the Court to

2   Judge Willett's order, Document 415, it stated a settlement was

3   reached as to all parties and all claims.  And that's what it

4   was.  It was a global settlement including all parties and all

5   claims.  It's the only way that it would be done.  And

6   separation or offered separation of the parties other than

7   going globally, that was rejected.  So we proceeded on all

8   claims and -- and all parties to reach a global settlement.

9           MS. BROADDUS:  That's -- Your Honor, I would just

10  disagree with that, that our communications with Judge Willett

11  were different than what Mr. Popolizio is articulating to the

12  Court right now.  We were clear that the settlement was not

13  involving the children.

14          Similarly, you know, Defendant Fernandez wasn't even a

15  part of the settlement negotiations at all.  He wasn't even

16  present.  And he -- you know, he hasn't formally been dismissed

17  with an order that would set up the time to start the appeal.

18  So, you know, they didn't have him there even.  So I think

19  there was a -- a conclusion that he wasn't needed for

20  settlement, just like we believe that some of the minors were

21  not needed for settlement.

22          And just for clarification, you know, this Court

23  cannot -- unfortunately, the way that Arizona statute is -- is

24  written, it allows superior court judges only -- only superior

25  court judges and -- let me see here -- a judge pro tem are the

only ones that can approve a minor's settlement.  That's why we specifically excluded them from this whole process.

Now, I understand that when the Judge said "the parties," I assumed that she was referring to the parties that were participating in the settlement conference.  Well, I think there was just some miscommunication or a misunderstanding between two different parties on that issue.

MR. POPOLIZIO:  Your Honor, if I may.

You know, Arizona Probate Court Rule 53(a)(1) says: When required.

And it says:  Except as provided in Subpart (a)(2) -- (a)(2), no settlement of a claim brought on behalf of a minor or adult in need of protection is binding on the minor or the adult in the need of protection unless it is approved by a judicial officer.

I would submit to the Court that you're a judicial officer.

MS. BROADDUS:  Of course, but Section (b)(2) --

THE COURT:  Just a minute.  One person at a time.

Mr. Popolizio.

MR. POPOLIZIO:  If the Court approves the settlement, it may authorize the execution of appropriate releases of liability.

When you go to (b)(1), which is what counsel was going to go to, it talks about the $10,000 mark.  Any superior court

1    judge or judge pro tem may approve the settlement of a minor's

2    claim if the settlement does not exceed $10,000.  If the

3    settlement exceeds $10,000, it must be approved by a superior

4    court judge or judge pro tem in a probate proceeding under

5    A.R.S. Title 14.

6            So the question remains.  If it's under $10,000, I

7    submit, Your Honor -- even if that's zero, I submit, Your

8    Honor, that this Court can approve the settlement because you

9    are a judicial officer.  If it is above, then it needs to go to

10   probate court.

11           I'm not hearing that it's above.  I am not hearing

12   that at all.  I'm hearing from plaintiffs that there are no

13   claims left and there's an admission --

14           THE COURT:  Right.  I mean, would you make -- you

15   would make the argument that by using the term judicial

16   officer in one sense and then the more specific terms superior

17   court -- what was it?  Superior court judge or pro tem --

18           MR. POPOLIZIO:  Judge pro tem.

19           THE COURT:  -- in the 10,000 -- in the -- in the

20   probate proceeding, that -- that has meaning.

21           You know, I could -- I suppose under the rule I could

22   approve the settlement under $10,000, but I'm not capable of --

23   of conducting a probate proceeding, nor would I want to, under

24   Arizona law.  I don't have that authority.  So that's why it

25   would -- why something over $10,000 would need to go to the

1   probate court.

2           You know, I'm just -- I'm just kind of speculating

3   without the benefit of any -- any research here, and that's

4   where I need the parties to come from.  So I think there --

5   that we have a disagreement on whether the settlement includes

6   the minor plaintiffs.  I don't think I could rule on that.  I

7   mean, I think that that's up to the parties to resolve.  And --

8   and then if it does, then -- then I feel -- suppose there's an

9   issue for me to resolve, which is can -- can I approve the

10  settlement, or does it have to be probated at the superior

11  court?

12          Does that sound right, Ms. Broaddus?

13          MS. BROADDUS:  Close.  Here's the issue on the

14  $10,000:  I think we're all in agreement that if it's over

15  $10,000, it definitely has to go through the probate

16  proceedings.  It's the first part of that paragraph that also

17  applies to the first one that says any superior court judge or

18  judge pro tem may approve the settlement of any minor's claim

19  if it's less than 10,000.  Which my understanding is that

20  opened the door to having a superior court case.

21          If this case was not in federal court, it was in state

22  court and we had a -- just one of the judges on the case, then

23  they would be able to approve it under the statute.  But

24  because we're in federal court, unfortunately, you're either

25  the superior court judge or a judge pro tem in that -- under

1    the statute.  So we're still under that -- yes, it's under the

2    10,000 because it's a zero, but it's still any claim under

3    10,000, which I guess would be a zero, it says any superior

4    court judge or judge pro tem may approve it.

5           So I think that was more the intent of the statute

6    without realizing that we have cases in Arizona in federal

7    court involving minors.

8           THE COURT:  Okay.  Anything else, Mr. Popolizio?

9           MR. POPOLIZIO:  Just the fact that, Your Honor,

10   when -- when I memorialized this via email, I specifically

11   stated that defendants will pay X dollars for a global

12   settlement of all claims by all plaintiffs against all

13   defendants in both the federal court action, named it in the

14   document number, and the recently filed state court action,

15   named the docket number.

16          So I don't think there's --

17          THE COURT:  And was that accepted by the -- by the

18   plaintiffs?

19          MR. POPOLIZIO:  Yes, Your Honor.

20          THE COURT:  Okay.

21          MS. BROADDUS:  Yes.  We were under the impression that

22   that meant Mr. Wheatcroft, that -- you know, I guess part of

23   that is just a misunderstanding on both sides is that when we

24   were just talking with Judge Willett, yes, it was going to be a

25   settlement of -- a global settlement of not only this case, but

1    a separate lawsuit as well.  And --

2              THE COURT:  Okay.

3              MS. BROADDUS:  -- so I think --

4              THE COURT:  Well -- well, you misread -- you misread

5    it, Ms. Broaddus.

6              All right.  Well, look, as I've told you before,

7    this -- this case has been around for four years.  The case

8    needs to either go to trial or -- or you need to settle the

9    case.

10             MR. POPOLIZIO:  Absolutely.

11             THE COURT:  And -- and I -- I regret that -- that the

12   case has -- you know, there are these issues.  So I don't think

13   we're in a position to try the case next week.  I'll give you

14   that.  I would like you to try and resolve these -- you know,

15   at least come to terms with -- with what sounds to me like it

16   was a pretty clear statement from defendants' lawyers, and --

17   and you just misread it, Ms. Broaddus.  So you need to work

18   that out.  And then -- and then I need to know what your

19   recommendation is, or competing recommendations are, how -- how

20   I handle these minor plaintiffs.

21             Because I -- I sympathize with the defendant.  I don't

22   think that it should put pen to paper and -- and pay money only

23   to have to revisit this in a handful of years.  And -- and, you

24   know, also, at that point I don't think it's fair to the

25   minors, these children, if these -- if -- if these issues

1    aren't resolved, because then they're going to reach the age of

2    maturity, and they're not going to know what their rights are

3    and potentially engage lawyers and go through this all again.

4    And, you know, maybe for something; maybe for nothing.  And

5    it's just a waste of resources for everybody.

6         So I'm open to hearing recommendation on how we

7    proceed.

8         Who wants to go first?

9         MR. POPOLIZIO:  I will, Your Honor.

10        THE COURT:  Okay.

11        MR. POPOLIZIO:  Your Honor mentioned briefing.  We

12   could turn around a -- a short brief and submit to the Court

13   what we think should be done.  And, you know, counsel could do

14   the same.  We could have the Court decide it.  I don't think we

15   need a regular motion, you know, and response according to the

16   rules.  I think that we could put this together.  It's Monday,

17   Your Honor.  I think that we can have it easily by the end of

18   this week if not earlier.  If we can get it to you, we will do

19   that.

20        And, you know, there's -- I want to be clear.

21   Defendants aren't trying to hold up the settlement of this

22   matter or delay it in any way.  We want it to end too, Your

23   Honor.

24        THE COURT:  I agree.  I -- I have no doubt in my mind.

25   So you think simultaneous supplemental briefs by Friday?  Is

1   that what you're --

2         MR. POPOLIZIO:  Yes.

3         THE COURT:  Okay.  And then maybe simultaneous

4   response briefs within a week?

5         MR. POPOLIZIO:  That sounds fine.

6         THE COURT:  Okay.  And so that you can all just

7   respond to what -- what each other says.

8         And -- and I -- and I would expect in the supplemental

9   briefs you recommend something for me to do, but -- but I -- I

10   don't think there's anything -- well, I mean, you could brief

11   whether you think there is a settlement agreement that's

12   been -- that's been accepted.

13         If you communicated to plaintiffs' counsel, here are

14   the terms, and plaintiffs' counsel accepted those terms, you

15   know, there may be issues of authority and certain issues like

16   that, like some basic agency issues in play, but -- but perhaps

17   there's a settlement agreement that I can enforce at this

18   point.

19         Is that something that you've thought of or maybe

20   you've -- you're suggesting or --

21         MS. BROADDUS:  Actually, that --

22         THE COURT:  I want to ask -- I --

23         MS. BROADDUS:  That's --

24         THE COURT:  I want to ask Mr. Popolizio first.

25         MR. POPOLIZIO:  It's a thought, Your Honor, but I have

1    to talk to my client about it.

2           THE COURT:  Okay.

3           MR. POPOLIZIO:  Again, I don't believe that there

4    would be a holdup.  But I know what Your Honor's saying about

5    meeting of the minds.  You know, were we -- was there one?  I

6    believe there was, Your Honor --

7           THE COURT:  Okay.

8           MR. POPOLIZIO:  -- and I believe that that was

9    confirmed.  So I'd like to leave that open.  If Your Honor

10   would like that to be part of the briefing, we can address

11   that.

12          THE COURT:  You can if you want, but -- but I guess it

13   then leads to this other question:  Let's say that there was a

14   meeting of the minds and there is an agreement for me to

15   enforce.  Can I enforce it with the understanding that these

16   are minors?

17          MR. POPOLIZIO:  Yes.

18          THE COURT:  Would --

19          MR. POPOLIZIO:  Absolutely.

20          THE COURT:  Would that -- did that have to go through

21   the Rule 53 process?

22          Okay.  Ms. Broaddus, what would you like to say?

23   And -- and you could --

24          MS. BROADDUS:  Yeah, I do have --

25          THE COURT:  You could give some responses or

1    recommendation.

2         MS. BROADDUS:  Yeah, I'm fine doing briefing.  I'd

3    even be fine if we did a joint statement to the Court.  We

4    don't disagree necessarily too much on the facts, but I think

5    we probably -- to keep things concise, we probably could do a

6    joint statement to the Court with both our recommendations.  To

7    cut down on the amount, we would need to do a supplemental

8    reply at that point.  We both have each other's sides in one

9    document for you.

10        But I do have a concern going to probate -- well, we

11   have to -- given the status of this, and we do have to

12   get Court approval from superior court, which I believe we have

13   to do based on this terminology, that there is an -- the

14   problem at issue is they're going to ask about all these claims

15   and could these claims potentially go forward, the appellate

16   rights?

17        I have a concern that they're going to reject the

18   settlement.  And here's -- here's my main concern about that,

19   Your Honor.  And I don't mean any disrespect by this, but in

20   the motion in limine number 14 on the ruling, it says that

21   there's -- the minors' claims still, because there is no gross

22   negligence.  However, gross negligence is not needed for an

23   intentional infliction of emotional distress claim.  And so

24   that opens up the door as to whether or not the minors should

25   still have a claim based on that.

1          And that's a concern I have, that if we're -- the

2   probate court's recommending a settlement on behalf of the

3   minors, and I'm advocating on their behalf, that's a concern I

4   have, that it could be -- this whole settlement could get

5   rejected.

6          THE COURT:  And what's your response to that,

7   Mr. Popolizio?

8          MR. POPOLIZIO:  My response to that, Your Honor --

9   and, unfortunately, I would not like to drag Her Honor into

10  this, though, but we had a settlement conference judge, and

11  that's Magistrate Judge Willett.  She could comment as to what

12  was discussed and negotiated.

13         And in terms of whether gross negligence could defeat

14  the intentional infliction claims of the minors, you know, a

15  few minutes ago counsel is saying there are no claims and we're

16  ready to just go forward.  You know, the minors don't have any

17  claims.  And -- and I just really would like it to be pinned

18  down.  What position is the plaintiff -- are the plaintiffs

19  taking, what plaintiffs' counsel is taking with regard to that

20  claim?

21         I disagree with -- with her position, as you well

22  know, with regard to the gross negligence and what it could

23  defeat under Spooner and its progeny.  And I believe we've

24  already kind of argued that.  Actually, Attorney Jackerman

25  actually argued that motion, but there was argument --

1          THE COURT:  Did you call him Jackerman?

2          MR. POPOLIZIO:  Yes.  Ackmerman.  That's his nickname.

3    I'm sorry, Your Honor.  Justin Ackerman is --

4          THE COURT:  So that's his email.  Okay.

5          MR. POPOLIZIO:  Yes.  Can I correct that in the

6    record, because that's quite embarrassing --

7          THE COURT:  So noted.

8          MR. POPOLIZIO:  -- but he'll laugh.

9          But the interesting thing is that the case that was

10   relied on by -- by plaintiffs, actually, there were statements

11   in there that this Court has not followed that -- that theory

12   or -- or that holding that it could defeat intentional

13   emotional distress claims or intentional claims.  And, in fact,

14   there have been other cases in this courthouse that actually

15   have.  So I -- I question the statement made in that particular

16   case.  I think it was the Hamberlin case that -- that counsel

17   relied on.

18         But, in any event, I think that the -- that the

19   Judge's first -- first thought about simultaneous briefing on

20   Friday is the best way to go.  Let's put our positions down and

21   put it down clearly, and then we could go from there.  I think

22   that is the -- that is the best way to go.

23         I reached out to counsel on Thursday night, and I

24   said, would you like to discuss it?

25         We haven't communicated.  I didn't hear back.

1          So could we just proceed this way?

2          And, again, I want to emphasize, you know, counsel,

3   what she said, she -- she said that she's concerned that we're

4   not going to want to go through or we're going to try to, you

5   know, reject the settlement agreement.  That's not the intent

6   of defendants.

7          THE COURT:  Okay.  Well, let's -- let's do

8   simultaneous supplemental briefs by Friday the 7th.  Those are

9   separate briefs.  And then you can file response briefs on

10  Friday the 14th.  I'd like to then set a -- a status conference

11  for us to visit the issue.  And I'm -- I'm going to ask

12  Ms. Richter to look for some dates.  Probably -- maybe -- maybe

13  the 24th.  Let's see if I have some time there.

14          And, counsel, could you check your calendars, please.

15          MR. POPOLIZIO:  Yes, Your Honor.

16          24th?

17          THE COURT:  Yes, Monday the 24th.

18          (The Court and the courtroom deputy confer.)

19          MS. BROADDUS:  I'm available, Your Honor.

20          MR. POPOLIZIO:  Your Honor, I have a -- I have

21  depositions all day that day.

22          THE COURT:  Okay.  How about the next day, the 25th?

23          MR. POPOLIZIO:  Well, let me see.  Let me go back to

24  the 24th, Your Honor.

25          THE COURT:  It would have to be at about 4:00 o'clock

1    on either day because I have some -- I have a couple

2    meetings -- committee meetings those days.

3               MS. BROADDUS:  I can do either day, Your Honor.

4               THE COURT:  Okay.  Thank you, Ms. Broaddus.

5               MR. POPOLIZIO:  The 25th.  I could do the 25th, it

6    appears here, without question.  The 24th they're already

7    starting to put things down on -- on my calendar.

8               THE COURT:  It's okay.  It's okay.  So the 25th at

9    4:00 o'clock would work for you?

10              MR. POPOLIZIO:  Yes.

11              THE COURT:  Okay.  Ms. -- Ms. Broaddus, you already

12    said yes, but I just want to confirm.

13              MS. BROADDUS:  Yes.  You're correct, Your Honor.

14              THE COURT:  Okay.

15              MS. BROADDUS:  I'm available.

16              THE COURT:  So let's set the status conference to

17    discuss what you provide me in the supplemental briefs for

18    Tuesday, October 25th, 2022, at 4:00 o'clock p.m.  I'd like you

19    to be in court in person for that.

20              And -- and, Ms. Broaddus, Mr. Victor does not need to

21    attend.  His -- his -- let's just put it this way:  His

22    responsibilities that I imposed on him are discharged unless --

23    he's always welcome to come if he wants.

24              MS. BROADDUS:  Thank you, Your Honor.

25              THE COURT:  Yeah, please -- please pass that on to

1    him.

2              I'm going to vacate our hearing on Thursday and vacate

3    the trial date, but I want to give you all a heads up that if I

4    am not satisfied that we are on track to settle the case on the

5    25th, I will set another trial date, and it will -- it will be

6    probably early 2023.  And -- and I -- it's simply because the

7    case -- the case has to be -- has to end at some point.  And --

8    and either -- either we try the case or -- or you settle the

9    case.

10             And I do want to acknowledge that -- that both sides,

11   I think both of you have done yeoman's work on this over the

12   past several weeks and months.  I really do.  It's just

13   unfortunate that there are these issues that keep popping up

14   that we have to deal with.  But -- but I hope you understand my

15   need to manage my docket and to -- to get -- get these -- these

16   aging cases under control.

17             MR. POPOLIZIO:  We understand.

18             MS. BROADDUS:  Understood, Your Honor.

19             THE COURT:  Okay.  Is there anything further that --

20   that we should address?

21             MR. POPOLIZIO:  No, Your Honor.  I do not believe so.

22             MS. BROADDUS:  No.  Nothing from the plaintiffs.

23   Thank you, Your Honor.

24             THE COURT:  All right.  Well, thank you, counsel.

25             We're adjourned.

1          MR. POPOLIZIO:  Thank you, Your Honor.

2          MS. BROADDUS:  Thank you.

3          (Proceedings adjourn, 3:37 p.m.)

4                        ---oOo---

UNITED STATES DISTRICT COURT

1

2

3

4

5                          **C E R T I F I C A T E**

6

7          I, CATHY J. TAYLOR, do hereby certify that I am duly

8    appointed and qualified to act as Official Court Reporter for

9    the United States District Court for the District of Arizona.

10         I FURTHER CERTIFY that the foregoing pages constitute

11   a full, true, and accurate transcript of all of that portion of

12   the proceedings contained herein, had in the above-entitled

13   cause on the date specified therein, and that said transcript

14   was prepared under my direction and control.

15         DATED at Phoenix, Arizona, this 3rd day of October,

16   2022.

17

18

19                              s/Cathy J. Taylor
20                              Cathy J. Taylor, RMR, CRR, CRC

21

22

23

24

25